**Raymond Lee FRANKLIN,
Petitioner-Appellant,**

v.

**Robert FRANCIS, Warden,
Respondent-Appellee.**

No. 83–8022.

United States Court of Appeals,
Eleventh Circuit.

Nov. 16, 1983.

Rehearing Denied Jan. 9, 1984.
Rehearing En Banc Denied Jan. 30, 1984.

Ronald J. Tabak, John Charles Boger, New York City, for petitioner.

Susan Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent.

Before TJOFLAT and HILL, Circuit Judges, and SIMPSON, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Raymond Lee Franklin was convicted in the Superior Court of Bibb County, Georgia, for the murder of Claude Collie and the kidnapping of Carol Heitmuller. He was sentenced to death for murder and to twenty years imprisonment for kidnapping. In this habeas corpus review, we determine that the Superior Court's instructions to the jury shifted the burden of proof on the issue of intent to Franklin and consequently rendered his conviction invalid.

I.

In brief, the facts leading up to Franklin's conviction are as follows. While Franklin was being held in the Cobb County, Georgia, jail for trial on two offenses unrelated to this appeal, he and four other inmates were taken to a local dentist's office for treatment. While at the office, the inmates were handcuffed to a length of chain. Franklin was released from the handcuffs for an injection, and while he was free, he grabbed the gun of one of the two law enforcement officers guarding him. He released the other inmates, seized the dentist's car keys, and escaped, taking the dentist's receptionist, Carol Heitmuller,

with him as "protection." When the car keys did not work, Franklin took Ms. Heitmuller into a nearby neighborhood in search of another car. He knocked on Claude Collie's door, and when Collie answered, pointed the gun at him and demanded the keys to his car. Collie slammed the door in Franklin's face, and the gun Franklin was carrying discharged. The bullet traveled through the door and killed Mr. Collie. Franklin then fired a shot up into the ceiling. Meanwhile, Ms. Heitmuller managed to run to a neighbor's house. When Mrs. Collie, who was in the back of the house, heard the shots, she came to the door. Franklin demanded car keys from her. After she, too, fled to a neighbor's house, Franklin ran away. He eluded capture the rest of the day, but was caught that night, shortly after attempting to enter an occupied car in a parking lot.

Franklin was tried and sentenced in the Superior Court of Bibb County.[1] He appealed his conviction and sentence to the Georgia Supreme Court, which affirmed the trial court. *Franklin v. State,* 245 Ga. 141, 263 S.E.2d 666 (1980). The United States Supreme Court denied certiorari. *Franklin v. Georgia,* 447 U.S. 930, 100 S.Ct. 3029, 65 L.Ed.2d 1124 (1980). Franklin thereafter filed a petition for a writ of habeas corpus in the Superior Court of Butts County. The petition was denied in an unreported order, and the Georgia Supreme Court declined to grant a certificate of probable cause to appeal. The United States Supreme Court

denied certiorari. *Franklin v. Zant,* 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 458 (1982). Franklin then petitioned the district court for a writ of habeas corpus. The district court denied his petition, without an evidentiary hearing, and Franklin took this appeal.

Franklin's petition alleged that the state trial court committed constitutional error (1) by refusing to excuse a venireman for cause, (2) by delivering instructions to the jury, at the conclusion of the guilt phase of Franklin's trial, that shifted the burden of proof to the defendant on the issues of intent, malice, and accident, in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), (3) by allowing the state to introduce evidence of nonstatutory aggravating circumstances during the sentencing phase of his trial, and (4) by refusing to admit Franklin's mitigating evidence. The record of Franklin's trial discloses a *Sandstrom* violation in the intent instruction as a matter of law; therefore, the writ must issue. We need not address petitioner's other claims.

## II.

The *Sandstrom* trial court charged the jury: "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513, 99 S.Ct. at 2453. Franklin contends that the instruction on intent at his trial[2] was sufficiently

---

1. He was originally scheduled to be tried in Cobb County but obtained a change of venue to Bibb County.

2. The charge to the jury in relevant part reads as follows; the challenged intent instruction is italicized.

   The defendant's plea of not guilty which has been entered on his behalf challenges and denies every material allegation in each count of this indictment and I charge you that before the State is entitled to a verdict of conviction of this defendant at your hands upon either count of this indictment, the burden is upon the State of proving the defendant's guilt as charged in such count beyond a reasonable doubt. The State, however, is not required to prove the guilt of the defendant beyond all doubt or to a mathematical cer-

tainty. Moral and reasonable certainty is all that can be expected in a legal investigation.
   \*　　\*　　\*　　\*　　\*　　\*
   Now, the defendant enters upon his trial with the presumption of innocence in his favor and this presumption, while not evidence, is yet in the nature of evidence and it remains with him throughout the trial, unless and until it is overcome by evidence sufficiently strong to satisfy you of his guilt to a reasonable and moral certainty and beyond a reasonable doubt.
   \*　　\*　　\*　　\*　　\*　　\*
   Now, Ladies and Gentlemen, the burden is upon the State to prove to a reasonable and moral certainty and beyond a reasonable doubt every material allegation in each count of this indictment and I charge you further, that there is no burden on the defendant to prove anything. The burden is on the State.

similar to the instruction in *Sandstrom* to warrant reversal. The Supreme Court in *Sandstrom* analyzed the type of challenge Franklin presents in several steps.

Now, I give you in charge, certain definitions as found in the Criminal Code of the State of Georgia.

A crime is a violation of a statute of this State in which there shall be a union of joint operation of act or ommission to act, and intention or criminal negligence. A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention or criminal negligence. *The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.* A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

\* \* \* \* \* \*

As to Count II, the State contends that Raymond Lee Franklin did on or about the 17th day of January, 1979, in Cobb County, with malice aforethought, kill Claude Collie, a human being, by shooting the said Claude Collie with a certain pistol, contrary to law, thereby committing the offense of murder.

As to Count II, I charge you that the law of Georgia defines murder as follows: A person commits murder when he unlawfully and with malice aforethought either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

Now, you will see that malice is an essential ingredient in murder as charged in this indictment in Count II, and it must exist before the alleged homicide can be murder. Malice in its legal sense is not necessarily ill will or hatred; it is the unlawful, deliberate intention to kill a human being without justification or mitigation or excuse, which intention must exist at the time of the killing. It is not necessary, however, that this unlawful, deliberate intention should exist for any particular length of time before the killing. If it

The threshold inquiry, according to *Sandstrom,* is "to determine the nature of the presumption [the jury instruction] describes." *Id.* at 514, 99 S.Ct. at 2454. This requires "careful attention to the words

enters the mind of the slayer the moment before he fires the fatal shot or strikes the fatal blow or inflicts the fatal wound, that is sufficient.

Members of the jury, I charge you that it is not encumbent [sic] upon the accused to prove an absence of malice if the evidence for the prosecution shows facts which may excuse or justify the homicide. The accused is not required to produce evidence of mitigation, justification or excuse on his part to the crime of murder. Whether mitigation, justification or excuse is shown by the evidence on the part of the State, it is not required of the accused to prove an absence of malice if the evidence for the State shows facts which may excuse or justify the homicide. But it is for you, the members of the Jury, to say after a consideration of all the facts and circumstances in the case, whether or not malice, express or implied, exists in the case.

Now, members of the Jury, I charge you that if you believe beyond a reasonable doubt that Raymond Lee Franklin, in Cobb County, at any time prior to the return of this indictment, with a weapon or instrumentality named in the indictment, and with malice aforethought, either express or implied, did unlawfully and intentionally shoot and kill the deceased, Claude Collie, as charged in the indictment, and you believe the weapon or instrumentality used in the manner used, if one was used, was one likely to produce death, then you would be authorized and it would be your duty to convict the defendant of the offense of murder and in that event, the form of your verdict would be, "As to Count II, we, the Jury, find the defendant guilty."

Now, as to each count of this indictment, the defendant contends that he is not guilty of the offense charged and further contends that the State has not proved his guilt of the offenses as charged in each count to a reasonable and moral certainty and beyond a reasonable doubt, and he further contends as to Count II, the murder, that the homicide was an accident.

I charge you that a person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking or intention of criminal negligence. An accident, in the eyes of the criminal law, is an event that takes place without one's foresight or expectation; that which takes place or begins to exist without design.

actually spoken to the jury, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Id.* The State argued in *Sandstrom* that the trial court's instruction on intent merely created either a permissive inference, or a presumption that shifted to the defendant only the burden of producing "some evidence," leaving the burden of persuasion beyond a reasonable doubt at all times on the State. The Court disagreed, finding that

> First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

*Id.* at 517, 99 S.Ct. at 2456. The Court noted that even if some jurors may have interpreted the challenged instruction as permissive, since a reasonable juror could have interpreted the presumption as mandatory, the instruction must be analyzed for constitutional purposes as mandatory. The Court stated, "[W]e cannot discount the possibility that Sandstrom's jurors actually did proceed upon one or the other of these [potentially more harmful] interpretations." *Id.* at 519, 99 S.Ct. 2457.

■ In the instant case, the judge instructed that

> [t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of

his acts but the presumption may be rebutted.

This is a mandatory rebuttable presumption, as described in *Sandstrom,* since a reasonable juror could conclude that on finding the basic facts (sound mind and discretion) he must find the ultimate fact (intent for the natural consequences of an act to occur) unless the defendant has proven the contrary by an undefined quantum of proof which may be more than "some" evidence. Thus, on the intent instruction, this case proceeds to the second stage of the *Sandstrom* analysis.

In this stage we must determine whether the alleged burden shift affected an essential element of the state law offense. This question requires recourse to the state statute defining the offense and the state courts' interpretation thereof. O.C.Ga. § 16–5–1 (1982) defines the crime of malice murder:

> A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

■ In *Lamb v. Jernigan,* 683 F.2d 1332, 1337 (11th Cir.1982), *cert. denied* —— U.S. ——, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983), we examined the Georgia decisions and concluded that intent to kill and the lack of provocation or justification are both essential elements of malice murder under the Georgia statute. Thus, the intent instruction in this case clearly relates to an essential element of the offense charged.

The Supreme Court's final step in *Sandstrom* was to determine whether either of the two possible interpretations of the intent presumption (that it was a conclusive presumption or a mandatory rebuttable presumption requiring the defendant to present evidence to the contrary) was constitutional. As the instruction in this case does not establish a conclusive presumption, we look to the *Sandstrom* analysis of a mandatory rebuttable presumption.

The Supreme Court rejected as unconstitutional a mandatory rebuttable presumption that did not make it plain to the jury that the burden of persuasion as to intent was on the State. The Court reached this conclusion because the jury "could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove he lacked the requisite mental state." 442 U.S. at 524, 99 S.Ct. at 2459. The Court found this result to violate the constitutional principles of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), in which a jury charge on malice murder allowed the jury to infer malice upon a showing of intentional unlawful homicide, unless the defendant proved by the preponderance of the evidence that he acted in the heat of passion on sudden provocation.[3]

The presumption on intent in this case allowed the same result as did the presumption in *Sandstrom.* A reasonable jury could have understood the instruction to mean that the burden to prove "no intent to kill" shifted to the defendant once the State showed sound mind, the act of pointing the gun at Mr. Collie, and pulling the trigger, of which the natural and probable consequence was Mr. Collie's death.

The problem with the charge on intent here is that the jury was never enlightened as to the nature of the burden on Franklin to rebut the presumption that he intended the killing. If the jury was persuaded that Franklin had to produce more than some evidence that he did not intend to kill, the burden shifted impermissibly on an element essential for a malice murder verdict.

■ The trial court's additional charge to the jury, (1) that criminal intent is not presumed and (2) that the burden to show every element of the crime is on the State, did not cure the faulty intent instruction. This charge was present in *Sandstrom,* and the court commented:

> The potential for [the impermissible] interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. But this is not rhetorically inconsistent with a conclusive or burden-shifting pre-

**3.** The Supreme Court cited *United States v. Chiantese,* 560 F.2d 1244, 1255–56 (5th Cir. 1977), as support for its rejection of conclusive presumptions and mandatory rebuttable presumptions as quoted. In *Chiantese,* our predecessor, the former Fifth Circuit (*see Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), where this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981), faced an instruction allowing a presumption of intent in the same way as did the instructions in *Sandstrom* and in the instant case. There, we used our supervisory power to require the district courts in this circuit, on pain of probable reversal, to eliminate the presumptive language. We cited with approval two jury instructions avoiding the problems, namely:

> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have

expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent.... [from *United States v. Wilkinson,* 460 F.2d 725 (5th Cir.1972), and]

> Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and [any act] done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.

> You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence. [from *Federal Jury Practice & Instructions,* § 14.13 (3d ed. 1977)].

sumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied.

442 U.S. at 518 n. 7, 99 S.Ct. at 2456 n. 7. The same is true of the general burden allocation instructions here.

Neither did the instruction that criminal intent should not be presumed eliminate the vice *Sandstrom* condemns. This instruction at best conflicted with the challenged presumption; it did not explain it. At worst, the jury could have made the instructions consistent, interpreting the burden to be on the defendant to rebut the presumption that he intended to kill Mr. Collie, and on the State to show that the killing itself was criminal. Even if the jury believed that the two presumptions conflicted, it would be impossible for us to tell which one they decided to apply, or whether they applied something in between. The only way the charge as a whole could have cured the instruction would have been to explain by what quantum of evidence the defendant must rebut the presumption. If no instruction is given expressly to explain or limit an instruction that otherwise impermissibly shifts the burden of persuasion under *Sandstrom,* we inevitably face a situation where the reasonable juror could conclude from either one impermissible shift or several conflicting presumptions, some of which are impermissible, that the burden has shifted.

### III.

 Our inquiry does not end with a finding that an instruction unconstitutionally shifts the burden of persuasion. Before reversing a conviction on the basis of a *Sandstrom* error, we must evaluate whether the error was harmless. *See, e.g., Lamb; Brooks v. Francis,* 716 F.2d 780 at 793–794 (11th Cir.1983). Here, Franklin admitted that he fired the gun and killed Mr. Collie. His only defense was that he did not have the requisite intent to kill. The facts did not overwhelmingly preclude that defense. The coincidence of the first shot with the slamming of the door, the second shot's

failure to hit anyone, or take a path on which it would have hit anyone, and the lack of injury to anyone else all supported the lack of intent defense. A presumption that Franklin intended to kill completely eliminated his defense of "no intent." Because intent was plainly at issue in this case, and was not overwhelmingly proved by the evidence (thus constituting harmless error under *Lamb*), we cannot find this error to be harmless. Accordingly, the district court's order denying the writ of habeas corpus must be reversed. On receipt of the mandate, the district court shall issue the writ, commanding the State to try Franklin within such reasonable time as the district court shall determine or to release him from any further restraint resulting from this conviction.

REVERSED, with instructions.