Roy L. PATTERSON,
Petitioner-Appellant,

v.

Sam AUSTIN, Respondent-Appellee.

No. 82-8092.

United States Court of Appeals,
Eleventh Circuit.

April 2, 1984.

John L. Carroll, Montgomery, Ala., for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before RONEY and CLARK, Circuit Judges, and GIBSON\*, Senior Circuit Judge.

CLARK, Circuit Judge:

In September of 1975, the petitioner, Roy L. Patterson, was tried and convicted in the

---

\* Honorable Floyd R. Gibson, U.S. Circuit Judge     for the Eighth Circuit, sitting by designation.

Superior Court of Crisp County, Georgia, for the murders of J.D. Young and W.R. Haralson, and was sentenced to two consecutive terms of life imprisonment. His convictions were affirmed on direct appeal to the Georgia Supreme Court, a subsequent petition for writ of habeas corpus in state court was denied, and the denial was affirmed on appeal. In June of 1980, Patterson filed an application for federal habeas corpus relief under 28 U.S.C. § 2254 in the Middle District of Georgia. The district court adopted the proposed findings and conclusions of the magistrate and denied the application, and Patterson now appeals that decision to this court. We reverse.

The facts of this case are presented in greater detail in *Patterson v. State,* 239 Ga. 409, 238 S.E.2d 2 (1977), but may be summarized as follows. On the evening of May 4, 1975, petitioner's brother Joe Patterson had pulled his automobile into a gasoline station in Cordele, Georgia, when he was stopped for a broken headlight by Trooper Young, who also asked that he take an alcohol breath test. The petitioner, who had preceded his brother into the gas station in a separate car, went over to see what the problem was. Young and the petitioner argued (there is some dispute as to how heatedly, T. 1002; 1557–58), after which Trooper Young took Joe Patterson to the Cordele police station for an intoximeter test. Petitioner, accompanied by his wife and baby, followed them there.

When petitioner arrived, he and Young resumed arguing (T. 1391–92). Again, it is unclear whether Young was abusive (T. 1762–63), or Patterson was belligerent (T. 1885; 1891; 2030–31), or both. Young ultimately attempted to handcuff the petitioner (T. 1425); one or the other of them reached for Young's revolver, and a struggle ensued. In the foray, six rounds were fired. Shot one hit no one; the state claims that this round passed through the police station wall (Brief of Appellee at 9), but Patterson insists that it went down and into the floor (T. 1808–09; Brief of appellant at 5). The record is uninstructive on this point. The testimony of firefighters in the next room indicates that shots two through six were fired in rapid succession (T. 1043–44). Shot two hit Young in the head at point blank range. Shot three struck Young in the chest, apparently as he fell to the floor; however, there is some question as to whether he was still standing or had already fallen when the third shot was fired. One expert testified that the third shot was fired from as much as two feet away (T. 1270–71; 1293), which implies that Young had fallen to the floor when shot three was fired, and would explain the bullet found lodged in the floor beneath Young's body (T. 1136; 1306–07). A second expert, however, testified that the third shot was a "muzzle blast" (T. 1212–13), which suggests that Young was still upright when the third shot was fired; if this were the case, the bullet in the floor may have been from the first shot. Officer Haralson, the only policeman present at the Cordele station, was hit in the abdomen by rounds four through six at point blank range, as he ran toward Young and Patterson (T. 1273; 1299). Patterson, along with his brother, wife and baby, left the station in Patterson's car, but was arrested in Cordele later that evening.

At trial, Patterson's jury was instructed as follows, respecting the crime of murder and the element of intent:

As applied to this case in each of its Counts I and II, Murder is defined by Section 26–1101 of the Code of Georgia, as follows:

A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart.

I charge you that malice is an essential ingredient in murder and it must exist before any homicide can be murder.

Malice, in its legal sense, is not necessarily ill will or hatred. It is the unlawful, deliberate intention to kill a human being without justification or mitigation or excuse, which intention must exist at the time of the killing. It is not necessary, however, that this unlawful, deliberate intention should exist for any particular length of time before the killing. Malice may be formed in an instant. Yet if it is in the mind of the slayer at the time of the killing, it is sufficient to constitute murder.

I charge you that to constitute Murder, it is not essential that malice shall exist *for any length of time, but it is sufficient if it exists only the moment before the homicide.*

I charge you that one may form the intent to kill unlawfully, do the act instantly, regret the deed as soon as it is done, and yet be guilty of Murder.

I charge you that the law presumes every intentional homicide to be malicious until the contrary is established.

I charge you that *all men are presumed to intend the natural and proximate consequences of their actions, and when a man kills another by use of means appropriate to that end, he is presumed to have intended that end.*

I charge you that a presumption of malice may arise from a reckless disregard for human life. A wanton and reckless state of mind may be the equivalent of a specific intent to kill.

Members of the Jury, I charge you that intent to commit the crime charged in this Indictment in Count I and Count II is an essential element that the State must prove beyond a reasonable doubt. Intent is always a question for the Jury and is ordinarily ascertained by acts and conduct. Intent may be shown in many ways provided the Jury finds that it existed from the evidence produced before them. It may be inferred from the proven circumstances or by acts and conduct, or *it may be presumed when it is the natural and necessary consequence of the act.*

I charge you that the acts of a person of sound mind and discretion are presumed to be the product of the person's will. *A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but these presumptions may be rebutted.*

I charge you that *a person will not be presumed to act with criminal intention,* but the trier of facts, and that's you, the Jury, may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.

I charge you that an affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse or mitigate it. With respect to an affirmative defense, unless the State's evidence raises the issues involving the alleged defense, the Defendant, to raise the issue, must present evidence thereon, but once an issue of an affirmative defense is raised, the burden of proof rests upon the State as to such issue as it does with respect to all issues in the case.

I charge you that *the law presumes that a person intends to accomplish the natural and probable consequences of his acts. If a person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily employed to produce death and thereby causes the death of a human being, the law presumes the intent to kill. This presumption may be rebutted.*

I further charge you that *a person shall not be presumed to act with criminal intention,* but the trier of facts may find such intention upon consideration of the words, conduct, demeanor and all other circumstances connected with the act for which the accused is prosecuted. The burden is upon the State to prove the act alleged to be criminal is, in fact, a criminal act beyond a reasonable doubt. (emphasis added).

Patterson assails the trial court's instruction as potentially burden-shifting and therefore unconstitutional under *Sandstrom*

*v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In *Sandstrom,* a jury instruction delivered at the defendant's murder trial that "the law presumes that a person intends the ordinary consequences of his acts" was held unconstitutional in light of *Mullaney v. Wilbur,* on the grounds that a reasonable juror could have understood the instruction to shift to the defendant the state's burden of proving the element of intent beyond a reasonable doubt. The Court acknowledged that "some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with 'some' evidence in rebuttal" (442 U.S. at 519, 99 S.Ct. at 2456, 61 L.Ed.2d at 48); if those were the only reasonable ways the instruction could be interpreted, it could not operate to shift the burden of persuasion to the defendant, and would consequently pass constitutional muster. The instruction was constitutionally flawed, however, because it was susceptible to either of two additional interpretations:

> First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of the intent.

442 U.S. at 517, 99 S.Ct. at 2456, 61 L.Ed.2d at 46.

In its charge to the jury in this case, the trial court used language nearly identical to that ruled unconstitutional in *Sandstrom:* "I charge you that all men are presumed to intend the natural and proximate consequences of their actions, and when a man kills another by use of means appropriate to that end, he is presumed to have intended

that end." While forced to concede that standing alone this portion of the instruction would violate *Sandstrom,* the state argues that curative language elsewhere in the charge assured that the above-quoted language would not be interpreted as a conclusive or burden-shifting mandatory rebuttable presumption. In support of this proposition, the state directs our attention to those places in the trial court's charge in which the jury is admonished that intent is an essential element of murder, that the state must prove intent and all other elements of the offense beyond a reasonable doubt, that a person will not be presumed to act with criminal intent, and that while the law presumes that a person intends to accomplish the natural and probable consequences of his acts, such a presumption may be rebutted.

In determining the effect of the trial court's instruction on the validity of Patterson's conviction, it is well settled that "a single instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373–74 (1973); *Lamb v. Jernigan,* 683 F.2d 1332, 1339 (11th Cir.1982). We must take the instruction as a whole, pay careful attention to the words actually spoken to the jury, and examine the charge from the perspective of a reasonable juror, to ascertain whether such a juror could have interpreted it as burden-shifting. *Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39, 44 (1979).

Taken as a whole, the trial court's instruction tends more to confuse than clarify. The jury is informed that intent "is an essential element of murder that the State must prove beyond a reasonable doubt." It is first explained that "when a man kills another by use of means appropriate to that end (as Patterson has admitted to doing), he is presumed to have intended that end." The court next indicates that intent "*may* be presumed when it is the natural and necessary consequence of the act." The

judge then charges that "a person will not be presumed to act with criminal intention," but three sentences later, reiterates that "the law presumes the intent to kill" when death is caused by a deadly weapon used as ordinarily employed, this time adding that "this presumption may be rebutted" (whether by some evidence, a preponderance of the evidence or some other quantum of proof is never indicated). In the next sentence, however, the court states again that "a person shall not be presumed to act with criminal intention."

A reasonable juror could have interpreted the trial court's instruction in any of several ways: that intent was to be conclusively presumed, that intent was to be presumed unless rebutted by an unknown quantum of evidence, that intent may be presumed, or that it was not to be presumed at all. To the extent that corrective or clarifying language fails to render an instruction, taken as a whole, insusceptible to either of the first two interpretations, it must be held to violate the rule of *Sandstrom v. Montana. Franklin v. Francis,* 720 F.2d 1206 (11th Cir.1983); *Phillips v. Rose,* 690 F.2d 79 (6th Cir.1982).

The instruction delivered in this case is substantially similar to that in *Franklin v. Francis,* 720 F.2d 1206 (11th Cir.1983). At issue in *Franklin* was the following jury instruction: "A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." The court ruled that this charge was unconstitutional under *Sandstrom.* Its rationale for so holding is extremely instructive, and worth quoting at length:

> The problem with the charge on intent here is that the jury was never enlightened as to the nature of the burden on Franklin to rebut the presumption that he intended the killing. If the jury was persuaded that Franklin had to produce more than some evidence that he did not intend to kill, the burden shifted impermissibly on an element essential for a malice murder verdict.

The trial court's additional charge to the jury, (1) that criminal intent is not presumed and (2) that the burden to show every element of the crime is on the State, did not cure the faulty intent instruction. This charge was present in *Sandstrom,* and the court commented:

> The potential for [the impermissible] interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied.

442 U.S. at 518 n. 7, 99 S.Ct. at 2456 n. 7. The same is true of the general burden allocation instructions here.

Neither did the instruction that criminal intent should not be presumed eliminate the vice *Sandstrom* condemns. This instruction at best conflicted with the challenged presumption; it did not explain it. At worst, the jury could have made the instructions consistent, interpreting the burden to be on the defendant to rebut the presumption that he intended to kill Mr. Collie, and on the State to show that the killing itself was criminal. Even if the jury believed that the two presumptions conflicted, it would be impossible for us to tell which one they decided to apply, or whether they applied something in between. The only way the charge as a whole could have cured the instruction would have been to explain by what quantum of evidence the defendant must rebut the presumption. If no instruction is given expressly to explain or limit an instruction that otherwise impermissibly shifts the burden of persuasion under *Sandstrom,* we inevitably face a

situation where the reasonable juror could conclude from either one impermissible shift or several conflicting presumptions, some of which are impermissible, that the burden has shifted.

*Id.* at 1211–12.

█ Not only in *Franklin v. Francis,* but also in *Corn v. Zant,* and to some extent in *Davis v. Zant,* our circuit has had recent occasion to examine a number of jury instructions and to determine whether such instructions impermissibly shifted to the accused the burden of persuasion on the element of intent to kill. *Corn v. Zant,* 708 F.2d 549 (11th Cir.1983); *Franklin v. Francis,* 720 F.2d 1206 (11th Cir.1983); *see also Davis v. Zant,* 721 F.2d 1478 (11 Cir.1983). At first glance, these cases are difficult to reconcile. The problem stems from the fact that *Sandstrom* -type issues cannot be decided by the application of a rigid and predetermined list of criteria, in which the presence or absence of a particular phrase must inevitably be dispositive of whether a given instruction is to be sanctioned or condemned. Rather, the relevant phases employed by the trial court must be viewed in the context of the overall charge; consequently, "Even were the charge in this case identical to that given in *Sandstrom,* the latter case would not necessarily compel reversal here . . . ." *Lamb v. Jernigan,* 683 F.2d 1332, 1339 (11th Cir.1982). Thus, the fact that the jury instructions at issue in *Corn, Franklin* and now *Patterson* had several relevant phrases in common does not compel the conclusion that a reasonable juror would interpret those phrases the same way in each case. Subtle differences in the length, phraseology and organization of the overall charge can render the identical remark burden-shifting in one instance but not in another. *Corn v. Zant,* 708 F.2d 549, 558 (11th Cir.1983).

The instructions in *Franklin* and *Corn* contained the charge that a person is presumed to intend the natural and probable consequences of his acts but that such a presumption may be rebutted. The instruction in *Franklin* was held to be impermissibly burden-shifting, while that in *Corn* was

not. In denying the state of Georgia's petition for rehearing en banc in *Franklin v. Francis,* the court proffered an explanation for the different outcomes. *Franklin v. Francis,* 723 F.2d 770 (11 Cir.1984). Unlike the instruction in *Francis,* "Corn's jury heard a charge 'replete with cautious explanations that refute Corn's claim that an irrebuttable presumption weighed against him'." Specifically, Corn's jury was told that the accused may but was not required to show circumstances to negate intent, and that the burden was not on the defendant to disprove intention. Such cautionary language was not present in the instructions given to the juries of Franklin or Patterson, and for that reason we hold that Patterson's jury charge, like Franklin's, could have been interpreted as burden-shifting, in violation of *Sandstrom v. Montana.*

█ Even where an instruction impermissibly shifts to the defendant the burden of proof on the element of intent, our court has identified two circumstances in which such error may be deemed harmless. *Mason v. Balkcom,* 669 F.2d 222 (5th Cir. Unit B 1982). First, a *Sandstrom* error is harmless if the offending instruction shifted the burden of proof to the defendant with respect to an element of the crime not at issue in the case. *Id.* at 227. Such a rule may be applicable where, for example, the trial court delivers an instruction shifting to the defendant the burden of disproving intent, when the accused's exclusive defense is mistaken identification. *United States v. Reeves,* 594 F.2d 536 (6th Cir.1979).

The district court below apparently concluded that such a rule was applicable in this case, and held that even if Patterson was improperly saddled with the burden of persuasion on the element of intent, the error was harmless, because Patterson had effectively conceded intent by pleading self-defense. The suggestion that a defendant admits intent to kill by pleading that he acted in self-defense was expressly rejected in *Mason v. Balkcom,* 669 F.2d 222, 227 (5th Cir. Unit B 1982):

Apparently, the district court believed that by raising self-defense the defendant

admitted having the intent to kill. This analysis is too broad. When claiming self-defense, one does not necessarily admit intent to kill, but rather admits that the killing occurred. As the petitioner points out in his brief, one can shoot to kill in self-defense, shoot to wound in self-defense, shoot to frighten in self-defense, or even shoot reactively in self-defense with no specific purpose. The mere raising of self-defense clearly does not establish that the defendant had the intent to kill. . . .

A second circumstance in which a *Sandstrom* violation may constitute harmless error, is "where the evidence of guilt is so overwhelming that the error could not have been a contributing factor in the jury's decision to convict." *Mason v. Balkcom,* 669 F.2d 222, 227 (5th Cir. Unit B 1982). Notwithstanding the district court's observation that "Petitioner's indictment and conviction were predicated upon strong and convincing evidence" (Record on Appeal at 122), we are unprepared to hold that such evidence was "so overwhelming" that the improper instruction could not have contributed to the jury's decision to find the defendant guilty of murder. There were no eyewitnesses other than the defendant and members of his family; evidence of an argument between Young and Patterson, coupled with the firefighters' testimony that the shots were fired in extremely rapid succession requires consideration of Patterson's characterization of the facts, and ballistics evidence tending to discredit that characterization was insufficiently conclusive to be regarded as overwhelming. In short, the case was not one in which the evidence mandated a finding that Patterson killed wantonly and maliciously. The evidence required a consideration of involuntary manslaughter, voluntary manslaughter and Patterson's defense of self-defense, as well as murder. Since the jury instructions could have been understood to require a presumption of the crucial element of malicious intent absent presentation by Patterson of some unknown quantum of evidence to the contrary, it is impossible to determine whether the verdict was tainted.

Patterson raises several other issues on appeal, which we need not address, given our decision to reverse in light of the erroneous jury instruction.

REVERSED.

RONEY, Circuit Judge, concurring, specially:

I concur with nearly everything that Judge Gibson has written, except that an affirmance can be squared with the cases in this Circuit following *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Thus, I concur with Judge Clark's decision of this case. Realizing this is a judgment subject to reasonable disagreement, until this Circuit is prepared to narrow the broad application of *Sandstrom* or is told to do so by the Supreme Court, I think a capital case like this is too close to call in favor of the State. Apparently the retroactivity of *Sandstrom* is under consideration by the Supreme Court. *Koehler v. Engle,* —— U.S. ——, 104 S.Ct. 231, 78 L.Ed.2d 224 (1984). If the Court decides against retroactivity, then the issue on which we reverse would not be applicable to Patterson's trial in 1975, *Sandstrom* having been decided in 1979. I agree with Judge Gibson on his resolution of the other issues, although it is not necessary for the Court to reach those points in view of our decision on *Sandstrom.*

FLOYD R. GIBSON, Senior Circuit Judge, dissenting:

I respectfully dissent. First, I do not believe that a reasonable juror would have failed to understand that the jury instruction, viewed in its entirety, created a permissive inference rather than a mandatory presumption on intent to kill. *Sandstrom* recognized that a charge containing a "permissive inference" on intent was constitutional. 442 U.S. at 514, 99 S.Ct. at 2454; *see also id.* at 527, 99 S.Ct. at 2461 (Rehnquist, J. concurring) Indeed, "[i]nferences and presumptions are a staple of our adversary system of fact finding". *County Court of Ulster v. Allen,* 442 U.S. 140, 156, 99

S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). In finding that the *Sandstrom* jury instruction contained an impermissible mandatory presumption, the Supreme Court emphasized: "Sandstrom's jurors were told that '[t]he law presumes that a person intends the ordinary consequences of his voluntary act.' They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it." 442 U.S. at 515, 99 S.Ct. at 2454. By contrast, the charge here was replete with language explaining the permissive or unmandatory nature of the presumption on intent. In all instances, except one, the objectionable presumption of intent language was qualified by the instruction that the presumption "may be rebutted." No such rebuttal language was present in *Sandstrom*. *See* 442 U.S. at 517, 99 S.Ct. at 2455. Furthermore, the jury in this case was also told that intent "*may* be inferred from the proven circumstances or by acts and conduct, *or* it *may be* presumed when it is the natural and necessary consequences of the act." (emphasis added). And most significantly, the jury was twice told, once at the end of the entire instruction, that "*a person shall not be presumed to act with criminal intention,* but that the trier of *may find such intention* upon consideration of the words, conduct, demeanor and all other circumstances . . ." (emphasis added). It seems entirely plausible to assume that this all important charge was repeated at the end of the instruction to clarify the permissive nature of the presumption described.

Though the instruction given here is not identical to any other instruction passed upon by the Eleventh Circuit, I believe that, in view of the permissive and clarifying language used, it is more like those found constitutional in *Corn v. Zant*, 708 F.2d at 558–59, and *Lamb v. Jernigan*, 683 F.2d at 1339–40, than the one found unconstitutional in *Franklin v. Francis*, 720 F.2d at 1210–11. However, I would disagree with *Franklin* if it is interpreted to mean instructions that a presumption "may be rebutted" and that "a person is not presumed to act with criminal intention" are wholly irrelevant to the determination of whether a reasonable juror would view the overall instruction as containing a permissive as opposed to mandatory presumption on intent. I think a "reasonable juror" would evaluate those instructions right along with other instructions directing that intent *"may be"*, but not *"must be"* presumed.

A major difficulty I have with the approach taken by the majority is that it sets such an amorphous standard for what "a reasonable juror" would think as to deprive the term "reasonable" of its well understood meaning. I find it incredible that the "reasonable juror" the majority speaks of would even be able to ascertain the critical distinction between an instruction which "mandates" an inference on intent and one which merely "permits" an inference on intent. *See Sandstrom*, 442 U.S. at 527–28, 99 S.Ct. at 2461 (Rehnquist, J., concurring). Presumably, the majority would agree that the instruction found objectionable here would have been constitutional had the references to "presume" been preceded by the qualifying term "may". *See Franklin v. Francis*, 723 F.2d 770 (11th Cir.1984) (per curiam; denying rehearing en banc). I believe that a juror who could seize the significance of this distinction would also recognize the overriding importance of the last and twice given instruction that "a person shall not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of words, conduct, demeanor and other circumstances connected with the act for which the accused is prosecuted".

However, even assuming that the charge given here shifted to the defendant the burden of persuasion on intent, I would agree with the district court that such defect did not prejudice Patterson's defense. Unlike the defendant in *Franklin*, whose sole defense was that he lacked the requisite intent to kill, Patterson's defense primarily focused on his lack of malice rather than his lack of intent. Indeed, Patterson's strongest defense presented to the jury appeared to be that the killings, even if done intentionally, were committed in self-defense. *See Mason* 669 F.2d at 227 ("one can

shoot to kill in self-defense.") My conclusion is buttressed by the fact that the jury had before it rather strong evidence demonstrating intent to kill. Specifically, Officer Young was twice shot at point blank range, once in the head and once in the chest; Officer Haralson was shot three times at point blank range, all three shots hitting him in the abdomen. The majority offers that Patterson's account about a struggle was not overwhelmingly discredited by the state's ballistic testimony. However, testimony of a struggle would be perfectly consistent with a self-defense justification for what certainly must have appeared to the jury to have been an intentional killing.

I would also reject Patterson's second argument for reversal, claiming his fair trial and due process rights were violated because blacks were systematically excluded from the jury pool from which the grand and traverse juries that indicted and tried him were drawn. Both the Georgia Supreme Court and the district court declined to rule on the merits of this claim, finding that Patterson procedurally waived his right to challenge the composition of the 1975 grand and traverse jury panels in Crisp County, Georgia, by failing to produce evidence before or at trial that blacks were underrepresented on the jury wheel. Those courts further determined that Patterson had failed to satisfy the "cause and prejudice" standard for excusing that procedural waiver. *Francis v. Henderson,* 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976). Patterson now claims he did not waive his right to challenge the jury array; that his objection was timely made, but the trial court denied him the opportunity to substantiate his claim of black underrepresentation by overruling his motion for a 90-day continuance. Presumably, the 90-day continuance was needed to hire a statistician to conduct a jury pool study. Patterson urges that the trial court's denial of his continuance constituted an abuse of discretion, and was so arbitrary and unfair that it violated principles of due process.

In order for the denial of a motion for continuance to constitute an abuse of discretion, the petitioner must demonstrate he was prejudiced from the denial. *United States v. Nickerson,* 669 F.2d 1016, 1023 (5th Cir. Unit B 1982). That prejudice must be both specific and substantial. *United States v. Wuagneux,* 683 F.2d 1343, 1355–56 (11th Cir.1982).

The result of the racial composition study presented at Patterson's state habeas hearing revealed: the general population of Crisp County was 40% black; the grand and traverse jury lists were 24.4% and 18.7% black, respectively. However 22 of 52 prospective jurors (42.3%) on the petitioner's traverse jury panel were black, and 6 of 12 jurors who actually tried the petitioner were black (appellee at 35).* Therefore, since Patterson was not deprived of his chance to a racially mixed jury, he cannot meet the specific prejudice requirement for relief. *See Huffman v. Wainwright,* 651 F.2d 347, 350 (5th Cir. Unit B 1981).

I agree with the district court that Patterson's remaining claims for reversal lack merit. I would therefore affirm the district court's judgment denying federal habeas corpus relief.

---

* The actual percentage of blacks on the defendant's grand jury was not furnished.