**Wayne T. LAKES, Petitioner-Appellant,**

v.

**Paul FORD, Warden, Respondent-Appellee.**

No. 84–8859.

United States Court of Appeals, Eleventh Circuit.

Jan. 17, 1986.

Kenneth P. McDuffie, Atlanta, Ga. (Court Appointed), for petitioner-appellant.

Paula K. Smith, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellant.

Before HILL and FAY, Circuit Judges, and TUTTLE, Senior Circuit Judge.

HILL, Circuit Judge:

This case is before the court on defendant-appellant Wayne T. Lakes' appeal from the district court's denial of habeas corpus relief sought pursuant to 28 U.S.C. § 2254.

Appellant was convicted of malice murder and sentenced to life imprisonment in Georgia state court in 1979. His conviction and sentences were affirmed by the Supreme Court of Georgia on direct appeal. *Lakes v. State*, 244 Ga. 217, 259 S.E.2d 469 (1979).

Appellant filed his first petition for habeas corpus in state court in February 1980. Following a hearing, relief was denied. Appellant filed a second state habeas petition in March 1982. That petition was dismissed as successive, and appellant's application for a certificate of probable cause to appeal to the Georgia Supreme Court was subsequently denied.

In June 1983 appellant filed the instant petition for habeas corpus relief in federal district court. In December 1983 the United States Magistrate entered an order finding one of appellant's claims unexhausted. Appellant subsequently filed a motion to delete the unexhausted claim, which motion was granted by the magistrate. In June 1984 the magistrate entered his report and recommendation, recommending that relief be denied. The district court adopted the report and recommendation and denied habeas corpus relief on October 16, 1984. Appellant appeals from the judgment of the district court for appellee entered on that date.

Appellant argues on this appeal that (1) the trial court's charge to the jury unconstitutionally shifted the burden of persuasion on the issue of intent to appellant, which error cannot be considered harmless beyond a reasonable doubt; (2) the district court should have granted appellant's request for an evidentiary hearing on his *Brady* violation claim; (3) the district court should have granted appellant an evidentiary hearing on whether he had exhausted his ineffective assistance of counsel claim; and (4) he is entitled to an evidentiary hearing on the merits of that claim. Because of the conclusion we reach with respect to appellant's first claim above, we need not and do not address the remainder of his claims on this appeal.

### FACTS

Appellant's prosecution arose out of a shooting that occurred shortly before dawn one morning in front of a liquor store in Fulton County, Georgia. According to the testimony of Charles Chester, who testified for the state, the shooting victim had joined a dice game in progress in front of the liquor store just a few minutes before he was shot. Chester testified that he saw appellant walk up to the victim, approaching him from behind, and that, although Chester "didn't pay too much attention," it "seemed like [appellant] had something in

his hand." According to Chester, the victim was bending over as he prepared to throw the dice when appellant approached. Chester testified that he heard someone shout "Look out, he's got a gun," and that the victim then turned and rose to a standing position as the first shot was fired. Chester testified that the victim grabbed appellant and that, as they struggled over the gun, two more shots were fired. The witness stated that he could not see whose hand was on the gun when the shots were fired.

The state presented the expert testimony of a forensic pathologist who performed an autopsy on the victim shortly after his death. The expert testified that the victim was hit by two of the shots fired from appellant's gun. One shot entered the outside of the victim's right shoulder, penetrating the skin and muscles of the victim's right arm and proceeding downward through the right chest cavity, finally lodging in the sixth thoracic vertebra. The other shot entered the victim's right lower chest and proceeded at a slightly upward angle through the right lung, causing some damage to the area of the heart. The forensic pathologist testified that a powder burn surrounded the second shot's point of entry into the body, indicating that the shot had been fired from a muzzle positioned no more than an inch away from the victim's body. No powder burn surrounded the bullet hole in the victim's right shoulder. Thus the expert's testimony tended to support the version of events described by Chester in his testimony for the state.

Janet Johnson, who was called by the defense, testified that she was with the victim on the night of the shooting. She stated that she and the victim had been drinking and were walking toward the liquor store when she heard a gun shot. Johnson testified that she ran behind a car and, from that location, heard two more shots. According to Johnson, she then stood up and saw appellant and the victim struggling.

Appellant testified that he was throwing dice when the victim approached him from behind and attacked him. According to appellant, the two men began fighting and appellant pulled out his gun. Appellant testified that four shots were fired in the course of the ensuing scuffle, but that he did not know whether the victim pulled the trigger or the gun discharged for some other reason.

As the men were struggling, a police officer patrolling the area approached in his patrol car. The officer testified that it appeared as if the victim was attempting to hold on to appellant, and that the victim said he had been shot. The officer did not hear any shots, nor did he see a gun until the .32 caliber revolver used in the shooting was recovered from a spot near where the incident occurred.

Appellant testified that he had known the victim for a long time, and that the victim was a dangerous individual who commonly carried a knife. Appellant claimed he was assaulted by the victim, who then cut him on the face and neck, a week before the shooting. A friend of the victim testified that sometime during the week preceding the shooting appellant told a group of people that he was looking for the victim, that he was going to kill the victim the next time he saw him, and that they should relay to the victim those facts. Appellant denied making any such statements.

## DISCUSSION

■ We need only address appellant's claim that the trial court's charge to the jury unconstitutionally shifted the burden of persuasion on intent, and that the trial court's error cannot be considered harmless beyond a reasonable doubt. The portion of the charge that appellant claims impermissibly shifted the burden of persuasion instructed the jury as follows:

[T]he acts of a person of sound mind and discretion are presumed to be the prod-

uct of the person's will, and such person is presumed to intend the natural and probable consequences of his acts, but either of these presumptions may be rebutted.

The state urges that we read the instruction quoted above in conjunction with the following statement, which immediately followed the challenged portion of the charge:

Such person, however, would not be presumed to act with criminal intention, but you, the jury, may find such intention upon consideration of the words, the conduct, the demeanor, the motive and all other circumstances connected with the act for which the accused is on trial, it being your duty to carefully evaluate all of the relevant circumstances in that regard, the question of intent resting finally with you.

According to the state, this language distinguishes the charge given in this case from otherwise similar charges that we have held unconstitutional, clarifying the nature of the task the jury must perform and eliminating any ambiguity that might otherwise exist concerning who bears the burden of proof on intent and how that burden might be satisfied.

The due process clause of the fourteenth amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). This principle has been held to render unconstitutional any evidentiary presumption in a jury charge that may have the effect of relieving the state of its burden of persuasion on any element of the crime with which the accused has been charged. *See Sandstrom v. Montana*, 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39 (1979).

Intent to kill is an element of the crime of malice murder in Georgia, *see Mason v. Balkcom*, 669 F.2d 222, 224 (5th Cir. Unit B

1982) [1]; a finding of intent to kill would also have satisfied the scienter element of the offense at issue in *Sandstrom*. 442 U.S. at 521, 99 S.Ct. at 2458. The jury in *Sandstrom* was instructed that "[t]he law presumes that a person intends the ordinary and natural consequences of his voluntary acts." *Id.* at 513, 99 S.Ct. at 2453. Because the jurors were not told that the presumption could be rebutted, "a reasonable jury could well have interpreted the presumption as 'conclusive,' that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption." *Id.* at 517, 99 S.Ct. at 2456. The Court also recognized that a reasonable juror could have interpreted the challenged instruction as creating a rebuttable presumption, shifting to the defendant the burden of persuasion on intent. *Id.* Finding either interpretation to have deprived the petitioner in that case of due process of law, the Court held the instruction given there unconstitutional.

In *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Court held, as it had indicated in dicta in *Sandstrom*, that an instruction that might reasonably be interpreted as creating only a mandatory *rebuttable* presumption of intent is also unconstitutional, despite the presence of extensive curative language in the charge. In that case the jury was instructed that the defendant was presumed innocent until proven guilty, that the state was required to prove every element of the offense beyond a reasonable doubt, and that the defendant would not be presumed to act with criminal intent. 105 S.Ct. at 1973–77. The Court found those instructions insufficient to save the mandatory rebuttable presumption of intent from constitutional infirmity, concluding that "[l]anguage that merely contradicts and does not explain a constitutionally

infirm instruction will not suffice to absolve the infirmity." *Id.* at 1975. *See also Davis v. Kemp*, 752 F.2d 1515, 1518–19 (11th Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); *Patterson v. Austin*, 728 F.2d 1389, 1394 (11th Cir.1984); *Francis v. Franklin*, 720 F.2d 1206, 1212 (11th Cir.1983), *affirmed,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

We are constrained by the foregoing binding precedent to find the charge given the jury on intent in this case unconstitutional. The assertedly curative instruction concerning criminal intent in this case adds to similar instructions found constitutionally insufficient to explain any ambiguity created by similar mandatory presumptions in many prior cases only the following italicized language:

> Such person, however, would not be presumed to act with criminal intention, but you, the jury, may find such intention upon consideration of the words, the conduct, the demeanor, the motive and all other circumstances connected with the act for which the accused is on trial, *it being your duty to carefully evaluate all of the relevant circumstances in that regard, the question of intent resting finally with you.*

The italicized language above does indeed distinguish the charge given in this case from otherwise similar charges we have condemned in one important respect. In cases involving similar instructions, but lacking the italicized language, this court and the Supreme Court have taken the view that the language concerning criminal intent, because it repeatedly refers to *criminal* intent and never refers to intent alone, might be interpreted by the jury simply to require that the state prove that the act was a criminal act, while the burden would remain on the defendant to rebut the presumption that he intended to kill. *See*

---

**1.** This circuit has adopted as precedent all decisions of Unit B of the former Fifth Circuit.

*Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982).

*Francis v. Franklin,* 105 S.Ct. at 1974; *Patterson v. Austin,* 728 F.2d at 1394.[2] In this case, however, the italicized language renders it clear that the instruction concerning criminal intent and the preceding mandatory presumption both refer to the intent element of the crime.[3] But that distinction is not enough to cure the constitutional error in the mandatory presumption of intent. Given the construction we have found a reasonable juror might give the mandatory rebuttable presumption of intent, the assertedly curative language on criminal intent only contradicts the mandatory presumption without explaining its import and applicability. Further, the added language that we have rejected to explain to the jury that they should determine appellant's intent from the evidence alone, and that they should not rely on the mandatory presumption to satisfy the state's burden of proof. If the extensive curative language present in *Franklin* was not enough to save the mandatory presumption there from constitutional infirmity, we cannot find virtually the same language, aided only by the clarification added by the italicized language quoted above, sufficient to cure the error in this case. It seems clear in the wake of *Franklin* that, at least in this area of the law, the admonition of *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973), that reviewing courts endeavor always to read and evaluate a jury charge as a whole when determining its constitutionality has fallen somewhat by the wayside. We

---

**2.** In *Franklin,* the following instruction on criminal intent immediately followed the mandatory presumption in the charge:

> A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

105 S.Ct. at 1974. The Supreme Court interpreted the instruction quoted above as follows:

> The statement *"criminal* intention may not be presumed" may well have been intended to instruct the jurors that they were not permitted to presume the absence of provocation or justification but that they could infer this conclusion from circumstantial evidence. Whatever the court's motivation in giving the instruction, the jury could certainly have understood it this way. A reasonable juror trying to make sense of the juxtaposition of an instruction that "a person of sound mind and body is presumed to intend the natural and probable consequences of his acts," App. 8a–9a and an instruction that "[a] person will not be presumed to act with criminal intention," App. 9a, may well have thought that the instructions related to different elements of the crime and were therefore not contradictory—that he could presume intent to kill but not the absence of justification or provocation.

105 S.Ct. at 1974 (emphasis in original). In *Patterson,* we stated concerning a similar instruction on criminal intent that "[a]t worst, the jury could have made the instructions consistent, interpreting the burden to be on the defendant to rebut the presumption that he intended to kill [the victim], and on the State to show that the killing itself was criminal." 728 F.2d at 1394. In other cases we have been less precise. In *Davis v. Kemp,* after quoting the preceding language from *Patterson,* we stated of a curative instruction on criminal intent similar to that at issue in *Patterson* and *Franklin* as follows:

> The court concluded in both *Patterson* and *Franklin* that the challenged instruction unconstitutionally shifted the burden of proof, the same is true of the instant instruction, whose criminal intent provision is more likely to enhance than to correct the jury's confusion.

752 F.2d at 1518–19. *See also Drake v. Kemp,* 762 F.2d 1449, 1453 (11th Cir.1985) (similar criminal intent instruction found insufficient to cure error created by mandatory presumption because indistinguishable from that found insufficient in *Franklin* ); *Tucker v. Kemp,* 762 F.2d 1496, 1501 (11th Cir.1985) (same).

**3.** The instruction on criminal intent in *Drake* included language that is very similar to the italicized language in the charge given the jury in this case. In *Drake* we rejected the argument that the criminal intent instruction cured the error in the mandatory presumption of intent, finding *Franklin* to be controlling. Although the language used in the criminal intent charge in *Drake* is similar to that at issue in this case, the state trial court in *Drake* referred only to "criminal intent" or "such intent," nowhere making clear that criminal intent referred to or incorporated the same "intent" element of the crime to which we have found the mandatory presumption to be reasonably understood to refer.

therefore must find a *Franklin* violation in the charge given the jury in this case.[4]

■ We thus proceed to a consideration of whether the impermissibly burden-shifting instruction on intent constitutes harmless error under the circumstances of this case. The Supreme Court has again recently left undecided the question whether such an error can ever be considered harmless. *See Francis v. Franklin*, 105 S.Ct. at 1977. We have since reaffirmed the view of this circuit, however, that impermissible burden-shifting instructions, like other errors of constitutional magnitude, may be held harmless beyond a reasonable doubt. *See, e.g. Brooks v. Kemp*, 762 F.2d 1383, 1390 (11th Cir.1985). Our cases establish that a *Sandstrom* or *Franklin* violation may be found harmless in either of two situations: (1) where the evidence of the defendant's guilt, or the satisfaction of the burden the prosecution should have borne on the issue on which the burden was improperly shifted, is overwhelming; or (2) where the instruction concerns an element of the crime not at issue in the trial. *See generally Davis v. Kemp*, 752 F.2d at 1520–21; *Brooks v. Kemp*, 762 F.2d at 1390–94; *Drake v. Kemp*, 762 F.2d at 1453–57; *Tucker v. Kemp*, 762 F.2d at 1501–03.

In this case, we cannot know how the case was argued to the jury, as counsel's opening statements and opening and closing arguments were not recorded and transcribed. That fact renders it considerably more difficult for us to determine whether the error on intent was harmless beyond a reasonable doubt. *See Mason v. Balkcom*, 669 F.2d 222, 228 (5th Cir. Unit B 1982) (Hill, J., specially concurring). In this case, however, we need not speculate about arguments appellant's defense counsel might have made at trial in order to see that intent to kill was clearly an issue on which a reasonable juror might have entertained a reasonable doubt.

Appellant testified at trial that he pulled the gun on his assailant when the shooting victim attacked him, and that he "couldn't tell whether the gun went off or whether [the victim] pulled the trigger" when it discharged and fatally wounded the victim during their struggle. To convict appellant, the jury must have found appellant to have shot the victim and thereby caused his death.[5] That finding could not have been influenced by the erroneous instruction on intent, so we may assume for the purposes of our analysis that appellant fired the fatal shots. The jury's rejection of appellant's claim that he did not shoot the victim, however, does not necessarily imply that they could have entertained no reasonable doubt concerning whether he intended to cause the victim's death. They may well have found it plausible that, as appellant testified, the fatal shots were fired in the course of a struggle, and they may thus have entertained some doubt about wheth-

---

**4.** We note that the result we reach in this case was only presaged in dicta in the case law on which we rely, and that no case to our knowledge has previously decided the constitutionality of the charge given in this case. In prior cases in which similar mandatory presumptions and instructions concerning criminal intent have been considered reconcilable, as referring to separate elements of the crime, this court and the Supreme Court have stated that even if the jury read the instructions both to refer to intent and thus to conflict, the constitutional infirmity in the charge remained. *See Franklin*, 105 S.Ct. at 1975–76; *Patterson*, 728 F.2d at 1394. Where a reasonable juror could have reconciled the instructions as the courts suggested in those cases, however, and such an interpretation rendered the charges unconstitutional, any further discussion of the constitutionality of other inter-

pretations jurors might have given the charges in those cases was dicta.

**5.** The indictment, which went into the jury room to aid the jury in its deliberations, charged that appellant "did unlawfully and with malice aforethought, cause the death of [the shooting victim], a human being, by shooting him with a pistol." At the outset of its charge to the jury, the trial court read the indictment to the jury, stating that it "forms the issue which you are to try in this case." The court reiterated near the conclusion of the charge that the jury had to "believe beyond a reasonable doubt that [appellant] did kill and murder [the victim] as alleged in [the] indictment" before they could return a guilty verdict.

er appellant intended to fire the shots that killed the victim at all.[6] Because appellant's intent to kill was at issue in the trial and was supported by evidence sufficient to create a reasonable doubt concerning appellant's intent, we cannot find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## CONCLUSION

For the reasons set forth above, the judgment of the district court denying habeas corpus relief on the *Sandstrom/Franklin* claim is REVERSED. The case is REMANDED to the district court with instructions to grant the writ of habeas corpus unless the state grants appellant a new trial within a reasonable period of time to be determined by the district court.

---

**6.** The testimony of the forensic pathologist who performed the autopsy on the victim tended to support the version of events described by Mr. Chester, who testified for the state. The expert's testimony cannot be read, however, to have established conclusively that appellant intended to take the victim's life.