**Curfew DAVIS, Petitioner-Appellant,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.**

No. 83–8244.

United States Court of Appeals, Eleventh Circuit.

Jan. 24, 1985.

Joseph M. Nursey, Atlanta, Ga., Kenneth J. Rose, Kenner, La., for petitioner-appellant.

Susan V. Boleyn, William B. Hill, Jr., Mary Beth Westmoreland, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM: *

In 1974, Petitioner Curfew Davis was convicted of murder in Georgia state court and sentenced to death. After an unsuccessful attempt to obtain a writ of habeas corpus in state court, Davis filed this petition for a writ of habeas corpus under 28 U.S.C.A. § 2254 (1976). The district court dismissed the petition without holding an evidentiary hearing. A panel of this court reversed on the ground that petitioner had been sentenced in 1977 before an unconstitutionally composed jury, and remanded for another sentencing proceeding, 721 F.2d 1478 (11 Cir., 1983). We granted the parties' petition for rehearing *en banc*. The court now reinstates those sections of the panel opinion in this case which address jury composition (Section I), application of aggravating circumstance "outrageously or wantonly vile, horrible or inhuman" (Section IV), effective assistance of counsel (Section V), petitioner's statements to police during in-custody interrogation (Section VI), and use of petitioner's prior convic-

---

* Concurring in Sections IIA and B of this Per Curiam opinion are: Chief Judge Godbold, Judges Vance, Kravitch, Johnson, Hatchett, Anderson and Clark.
Concurring in Section IIC of this Per Curiam opinion are: Judges Roney, Tjoflat, Hill, Fay, Vance, Henderson and Anderson.

tions (Section VIII). Because we agree with the disposition made by the panel opinion (Section I) as to the 1977 sentencing jury, we grant relief and remand the case to the district court with instructions to require yet another sentencing trial.

## I. PROCEDURAL HISTORY

Based on a series of events which occurred in and around LaGrange, Georgia, on July 19, 1974,[1] Curfew Davis, a black male, was charged in the Troup County Superior Court with first-degree murder. The victim was a young white woman who had been temporarily in LaGrange on a work assignment. The trial jury found Davis guilty of the murder charge and, under the Georgia bifurcated trial procedure, recommended that he be sentenced to death. The trial judge entered findings and imposed the death sentence.

Davis appealed to the Supreme Court of Georgia, which affirmed the convictions and the sentence. *Davis v. State*, 236 Ga. 804, 225 S.E.2d 241 (1976). The United States Supreme Court granted certiorari, vacated the death sentence for a violation of the *Witherspoon* standards as to one prospective venireperson, and remanded for a new sentencing proceeding. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976).

After the resentencing proceedings in June 1977 Petitioner was once again sentenced to death. The Supreme Court of Georgia affirmed, *Davis v. State*, 241 Ga. 376, 247 S.E.2d 45 (1978), and the United States Supreme Court denied certiorari. *Davis v. Georgia*, 439 U.S. 947, 99 S.Ct. 341, 58 L.Ed.2d 338 (1978).

Davis then brought a petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia. This petition was denied in April 1981. The Georgia Su-

---

1. The historical facts are set out in detail in *Davis v. State*, 236 Ga. 804, 225 S.E.2d 241 (1976).

preme Court denied an application for certificate of probable cause to appeal the judgment of the Superior Court, and the United States Supreme Court denied certiorari. *Davis v. Zant*, 455 U.S. 983, 102 S.Ct. 1491, 71 L.Ed.2d 692 (1982).

Davis then filed the present petition for writ of habeas corpus in the United States District Court for the Northern District of Georgia. He subsequently filed a motion for an evidentiary hearing. The district court denied both the motion and the petition. A panel of this court reversed, citing the unconstitutional composition of the 1977 sentencing jury, and remanded for a new sentencing trial. This Court granted the petition of both parties for rehearing *en banc*.

The habeas petition now before us raises issues with respect to petitioner's 1974 trial and his 1977 resentencing trial.

## II. THE *SANDSTROM* CLAIM

Petitioner claims that, during the 1974 culpability phase of his trial, the trial court's instructions to the jury on the elements of intent and malice violated his rights under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In that case the Court held that the judge's instructions deprived the defendant of due process because they were susceptible of an interpretation which removed from the prosecution the burden of proving every element of the crime beyond a reasonable doubt. To determine whether the judge's instructions in this case thus infringed the constitutional rights of the petitioner, we must consider first, whether the instructions concerned an essential element of the offense with which the petitioner was charged; second, whether the instructions operated to shift the burden of proof; and third, whether any error which might have arisen from the shifting of the burden was harmless in the context of this case. *Lamb v. Jernigan*, 683 F.2d 1332, 1336–42 (11th Cir.1982), *cert. denied*, 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983).

Neither party contests the finding of the district court that under Georgia law, the elements of malice and intent to kill are essential elements of the crime of murder, which the state is required to prove beyond a reasonable doubt. *See also Franklin v. Francis*, 720 F.2d 1206, 1210 (11th Cir. 1983), *cert. granted*, —— U.S. ——, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984); *Lamb v. Jernigan, supra*, 683 F.2d at 1336–37. The state argues, however, that both instructions contained sufficient clarifying language to dispel any impression that they relieved the prosecution of its burden of proof.

### A. Intent

The trial court gave the jury the following instruction with respect to the element of intent:

> Ladies and gentlemen, a crime is a violation of a statute of this state in which there shall be an [sic] union of joint operation of acts or an omission to act, and an intention for criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, but the presumption may be rebutted. A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Every person is presumed to be of sound mind and discretion, but the presumption may be rebutted.

The state argues first that the frequent repetition of the warning that the relevant presumptions "may be rebutted" renders the instruction as a whole sufficiently "permissive" to "pass muster" under *Sandstrom*. This argument misunderstands both the Court's opinion in *Sandstrom* and the application of that opinion to more recent cases by this court.

The Court held in *Sandstrom* that the language "the law presumes" was suscepti-

ble to interpretation as a mandatory presumption. Though this presumption could be regarded by the jury as rebuttable,[2] it was nonetheless unconstitutional, as it shifted the burden of proof to the defendant without specifying the quantum of evidence by which he could rebut the presumption. So long as the jury could conclude that the defendant was required to produce more than "some" evidence in order to rebut the presumption, the instruction impermissibly shifted the burden of proof. *Sandstrom v. Montana*, 442 U.S. at 517, 524, 99 S.Ct. at 2459.

The same rationale was applied by this Court in *Franklin v. Francis, supra*, to an instruction which was virtually identical to the one given in the instant case. In *Franklin*, this court observed that "the problem with the charge on intent here is that the jury was never enlightened as to the nature of the burden of Franklin to rebut the presumption that he intended the killing." 720 F.2d at 1211. Because the jury could have concluded that Franklin "had to produce more than some evidence that he did not intend to kill," *id.*, the instruction shifted the burden impermissibly to the defendant.[3] The instant instruction falls clearly under the rule established by *Sandstrom* and applied in *Franklin*. As it imposes a mandatory ("a person is presumed . . ."), rebuttable ("but this presumption may be rebutted") presumption, and fails to specify the quantum of proof by which the defendant may rebut that presumption, it possesses the same constitutional defect as the charges' found constitutionally defective in *Sandstrom* and *Franklin*.

The state argues next that the portion of the instruction stating that "a person will not be presumed to act with criminal intention" significantly reduces the likelihood that a jury could misinterpret the instruction. This claim has also been soundly rejected in recent cases decided by this Court.

The question was presented this year in *Patterson v. Austin*, 728 F.2d 1389 (11th Cir.1984), by an instruction which included both the presumptions challenged by Davis and the instruction offered here as curative by the State. With respect to that charge, this court explained:

> Neither did the instruction that criminal intent should not be presumed eliminate the vice *Sandstrom* condemns. This instruction at best conflicted with the challenged presumption; it did not explain it. At worst, the jury could have made the instructions consistent, interpreting the burden to be on the defendant to rebut the presumption that he intended to kill [the victim], and on the State to show that the killing itself was criminal. Even if the jury believed that the two presumptions conflicted, it would be impossible for us to tell which one they decided to apply, or whether they applied something in between.

728 F.2d at 1394. *See also Franklin v. Francis*, 720 F.2d at 1212 (same conclusion). The court concluded in both *Patterson* and *Franklin* that the challenged instruction unconstitutionally shifted the burden of proof. The same is true of the instant instruction, whose criminal intent

---

2. The Court held that the presumption might be interpreted as irrebuttable, or conclusive, or as rebuttable, 442 U.S. at 516–517, 99 S.Ct. at 2455–56, but because it did not, in either case, exclude the perception on the part of the jury that the defendant would be required to offer more than "some" evidence in order to rebut the presumption, it shifted the burden of proof in violation of the Constitution.

3. We reject the argument offered by the state that this Court's opinion in *Lamb v. Jernigan, supra*, should control with respect to the intent instruction. Notwithstanding the state claims

of similarity, there are differences of constitutional stature between the language of the instruction in that case and the language used here. Most notable is the use, in the *Lamb* instruction, of the language "intent *may be* presumed" (emphasis added). This language, which clearly signals a permissive presumption, is distinguishable from a mandatory directive ("the law presumes", "a person is presumed"), such as the one employed in this case. The court in *Lamb*, moreover, relied on this distinction in upholding the instruction in that case. 683 F.2d at 1340.

provision is more likely to enhance than to correct the jury's confusion.

The state's third argument, that any error was cured by the court's instruction that the prosecution has the burden of proving every element of a crime beyond a reasonable doubt, is also without merit. This claim was rejected by the Supreme Court in *Sandstrom*, which held that a general instruction that the prosecution is required to prove each element beyond a reasonable doubt is not "rhetorically inconsistent" with a burden-shifting presumption. 442 U.S. 518–19, n. 7, 99 S.Ct. at 2456–57, n. 7. The general instruction could have been interpreted to suggest, for example, that the presumption was one means by which the prosecution's burden of proof could be satisfied. *Id. See also Patterson v. Austin, supra,* 728 F.2d at 1394; *Franklin v. Francis, supra,* 720 F.2d at 1211–12. The instant instruction, which is identical to the general instruction concerning the burden of proof in the cases cited above, is susceptible to the same interpretation; thus it impermissibly shifts the burden of proof to the defendant.

### B. Malice

The trial court's instruction to the jury on the element of malice reads as follows:

> There can be no murder under the laws of this State without malice, either express or implied. The law presumes it to be malice until the contrary appears from the circumstances of alleviation or excuse or justification, and under the laws it is incumbent upon the defendant to make out such circumstances satisfactory to the jury, unless they appear from the evidence offered against the defendant.
>
> Ladies and gentlemen, while it is true that the law presumes malice when a homicide has been shown, yet that pre-

sumption of malice may be rebutted by the defendant from evidence offered by him or from evidence offered by the state or from both.

The state argues first that the curative language "or from evidence offered by the state or from both" eliminates any possibility that the instruction may be interpreted as shifting burden of proof on the element of malice. But this language, does not refute the inference that the defendant carries the burden of proof with respect to this element; if anything, it tends to reinforce that inference. What it specifies are the categories of evidence with which the defendant may satisfy that burden: with "evidence offered by him or ... by the state or from both." The fact that the defendant may have larger pool of evidence on which to draw in order to prove his innocence does not negate the conclusion suggested by the very unequivocal language "the law presumes" that the burden is on the defendant to demonstrate an absence of malice once a homicide has been shown.[4]

The state argues next that the instruction that "the presumption may be rebutted" is sufficient to cure any error engendered by the mandatory language preceding it. In support of this proposition, appellee cites this court's opinion in *Corn v. Zant,* 708 F.2d 549 (11th Cir.1983), which upheld as constitutional an instruction which contained both the mandatory presumption and the statement that the presumption may be rebutted. This claim is subject to the same infirmity as the analogous argument raised with respect intent: *Sandstrom* is concerned with whether the presumption is mandatory, not whether it is rebuttable. Once the jury is instructed that "the law presumes" malice, the burden has been unconstitutionally shifted, unless the instruction specifies the precise quan-

---

**4.** Similar language contained in the malice instruction in *Lamb v. Jernigan, supra,* did not, moreover, prevent that instruction from being struck down as unconstitutionally burden-shifting. *Lamb* instruction said that the defendant need not demonstrate circumstances rebutting the presumption where such circumstances "ap-

pear from the evidence produced against him." If this instruction, which is even more explicit in relieving the defendant of the burden of proof under certain circumstances, was insufficient to "pass muster" under *Sandstrom* then the instruction given in the instant case is insufficiently curative.

tum of evidence by which the defendant can refute the presumption against him. The state's reliance on *Corn* is, moreover, misplaced. The curative instructions contained in that charge included not only the general instruction on rebuttability, but several instructions which suggested that the presumption concerning malice was permissive rather than mandatory.[5] Because the instruction in this case contains none of these additional instructions, it is closer to the instruction given in *Franklin v. Francis, supra,* than to that upheld in *Corn.* The instruction in *Franklin,* which contained arguably stronger curative language than that included in the instant instruction,[6] was struck down because it failed to specify the quantum of evidence by which the defendant was required to refute the presumption against him. 720 F.2d at 1211. The instruction in the instant case, which is possessed of the same defect, requires a similar fate.

Nor is the instruction saved by the state's final argument, that the general instruction regarding the prosecutor's burden cured any error. This claim is no more effective with respect to malice than it is with respect to intent. *See supra,* at 2022–2023. Because the two presumptions are not necessarily inconsistent, a reasonable juror could still have concluded that the instruction shifted the burden of proof to the defendant. *Sandstrom, supra,* 442 U.S. at 518–19 n. 17, 99 S.Ct. at 2456–57, n. 17. Thus none of the ameliorative instructions offered by the state cures the unconstitutional shifting of the burden of proof effected by the mandatory presumptions concerning intent and malice; it only remains to be seen whether the error implicit in this shifting of the burden was harmless.

### C. *Harmless Error*

In *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), four members of the Court suggested that the harmless error doctrine may be *per se* inapplicable to a *Sandstrom* error; this absolute rule was not, however, adopted by a

---

**5.** The instruction in *Corn* also noted that the accused "may" show circumstances to negate intent, "but he is not required to do so"; that he "may" show that the killing was done without malice, "but he is not required to do so"; that "if such evidence produced against the accused, if there be such, discloses that the homicide was done without malice, then this presumption that homicide is malicious does not exist"; and that "this presumption ... does not arise against the slayer unless it be first shown to a moral and reasonable certainty and beyond a reasonable doubt the defendant was the intentional slayer."

Despite the more potent curative instructions included in that charge, it appears that the court in *Corn* upheld the instruction by applying a standard which was different than that developed in *Sandstrom* and employed in the later cases decided by the Court. The Court in *Sandstrom* held that whether the defendant's right had been infringed depended on how a reasonable juror "could have interpreted the instruction." 442 U.S. at 514, 515, 517, 519, 524, 99 S.Ct. at 2454, 2455, 2456, 2459. The Court held it to be irrelevant that a juror could have drawn a permissible inference, if the instruction also allowed a juror to draw an impermissible inference. *Id.* at 519, 99 S.Ct. at 2456. The Court in *Corn* begins by articulating this standard, 708 F.2d at 558, but inexplicably declines to apply it. The *Corn* panel reached its conclusion based on what *it believes* a reasonable juror *would* do, or

did in fact do, *id.* at 559, 560; it does not ask that a reasonable juror *could* have concluded, given the language of the instruction. This analysis also departs from this Court's opinions in *Lamb v. Jernigan,* 683 F.2d at 1338–40, *Franklin v. Francis,* 720 F.2d 1210–12, and *Patterson v. Austin,* 728 F.2d at 1394, which applied the *Sandstrom* standard. *Corn* also appears to be the only case in this Circuit to suggest that an impermissible instruction may be cured simply by the inclusion of a statement that the presumption created by the instruction is rebuttable. 708 F.2d at 559.

**6.** The *Franklin* instruction states: "it is not encumbent [sic] upon the accused to prove an absence of malice if the evidence for the prosecution shows facts which may excuse or justify the homicide. The accused is not required to produce evidence of mitigation, justification or excuse on his part to the crime of murder. Whether mitigation, justification or excuse is shown by the evidence on the part of the state, it is not required of the accused to prove an absence of malice if the evidence for the State showed facts which may excuse or justify the homicide." 720 F.2d at 1209. This curative instruction, which is ambiguous as to whether the defendant is obliged to make a showing of extenuation when this showing has *not* been made by the State, seems weaker than the curative instruction given in *Corn* and stronger than that given in the instant case.

majority of the Court. Therefore, under the existing precedent, harmless error can be invoked with regard to a *Sandstrom* violation.[7] *See also Lamb v. Jernigan,* 683 F.2d 1332 (11th Cir.1982), *cert. denied,* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983).

This court has identified two situations in which harmless error in the case of a *Sandstrom* violation can be invoked: if the evidence was overwhelming as to the defendant's guilt[8] and if the instruction was applied to an element of the crime which was not at issue at the trial.[9] *Lamb,* 683 F.2d at 1342. *See also Drake v. Francis,* 727 F.2d 990, 999 (11th Cir.1984); *Spencer v. Zant,* 715 F.2d 1562, 1577–78 (11th Cir. 1983). The defendant in this case gave a number of inconsistent versions as to his involvement in the murder. Though inconsistent, the predominant theme in all of them was that he had nothing whatsoever to do with the crime. *See Davis v. State,* 236 Ga. 804, 804–08, 225 S.E.2d 241, 242–43 (1976). Although there was no explicit concession of intent and malice, the main thrust of the defense was non-involvement.

The evidence in this case is overwhelming[10] that whoever killed the victim did so with intent and malice. The victim died of a .22 caliber pistol bullet in her brain; she also suffered severe fractures to her face and jaw bones, and her clothing had been torn into strips and tied together as if they

had been used as bonds to tie her. *Davis v. State,* supra. Under these circumstances, it is readily understandable why lack of intent was not affirmatively pursued. While the burden of proof with respect to intent and malice remained on the state, it was not a contested issue nor an alternative defense.

As stated by the Sixth Circuit in a recent opinion, *Engle v. Koehler,* 707 F.2d 241, 246 (6th Cir.1983), *aff'd by an equally divided court,* — U.S. —, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984) (per curiam), "the prejudicial effect of a *Sandstrom* instruction is largely a function of the defense asserted at trial." That Court of Appeals had divided *Sandstrom* violations into two categories: those which occur when the defendant claims non-participation in the crime and those when the defendant claims lack of *mens rea. Id.* In the first category the doctrine of harmless error may be found applicable. *Id.* The defense presented by Davis was non-participation. The intent of the person or persons committing the crime was not a contested issue. Under these circumstances, the doctrine of harmless error is most appropriate.

## CONCLUSION

Although we find a *Sandstrom* violation in the charge given to the 1974 jury (culpability proceedings), we hold it is harmless error under the particular circumstances of this case.

---

**7.** The harmless error doctrine stems from *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The inquiry made is whether a court may say "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.,* at 24, 87 S.Ct. at 828.

**8.** Numerous courts have applied harmless error when the evidence of the guilt of the defendant was overwhelming. *See e.g., United States v. Fricke,* 684 F.2d 1126, 1129 (5th Cir.1982); *Tweety v. Mitchell,* 682 F.2d 461, 465 (4th Cir. 1982).

**9.** Other courts have held that if a criminal defendant's intent is not a disputed issue at trial, then harmless error may be invoked. *See, e.g., Conway v. Anderson,* 698 F.2d 282, 285 (6th Cir.1983); *Petition of Hamilton,* 721 F.2d 1189 (9th Cir.1983); *United States v. Winter,* 663 F.2d 1120, 1144–45 (1st Cir.1981). *Cf. Redding v.*

*Benson,* 739 F.2d 1360, 1364–65 (8th Cir.1984) (failure to properly instruct on a material element of a crime does not warrant automatic reversal).

**10.** Although some opinions talk in terms of overwhelming evidence of *guilt,* (which will obviously always include the necessity of overwhelming evidence of intent), the analysis in the text makes it clear that the crucial inquiry relates to whether or not there is overwhelming evidence of intent. See *Connecticut v. Johnson,* 460 U.S. at 86, 103 S.Ct. at 977 (Blackmun, J.) and at 90, 96, 97, 99, 101, 103 S.Ct. at 979, 982, 983, 984, 985 (Powell, J.). The jury in this case concluded that Davis was the killer, and that conclusion could not have been affected by the erroneous instruction. Thus overwhelming evidence that Davis was the killer is not required.

REVERSED and REMANDED for appropriate relief in accordance with those sections of the panel opinion which have now been reinstated.

HILL, Circuit Judge, specially concurring, in which FAY, Circuit Judge, joins:

I concur in the judgment.

I concur in the special concurrence authored by Judge Fay and add these words.

In submitting this death penalty to the microscopic, and critical, examination currently practiced, the Supreme Court's reasoned opinion in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) has been distorted to an unreasonable result.

*Sandstrom* is a narrow holding resolving a case unlike the one now before us. The trial judge in *Sandstrom* instructed the jury in these exact words:

The law presumes that a person intends the ordinary consequences of his voluntary acts.

He made no further reference to the subject.[1] Although the instruction was probably designed to state that which Judge Fay correctly observes to be "... totally in accord with human behavior," it inadvertently intruded into a critical area. Criminal intent was, in that case (as it is in this one), an element of the crime. The burden of proving it was on the state. Unless the instruction were restricted (which it was not), it could be construed as providing a presumption by which the state's burden could be carried without proof.

The trial judge in the case we are reviewing did not so instruct the jury. Lest its members be led to believe that the presumption, "totally in accord with human behavior" in general, be extended to proof of a necessary element of the crime, he told the jurors, specifically and clearly,

A person will *not* be presumed to act with criminal intention ..." (emphasis added).

Perhaps I am not sufficiently sophisticated to find that a trial judge authorized a jury to presume criminal intent in an instruction which says that criminal intention will not be presumed, but I suggest that sophistry is no great virtue in our work.

### APPENDIX [2]

Petition for Writ of Certiorari

Filed in Supreme Court Clerk's office, September 12, 1978 by Counsel for Petitioner David Sandstrom.

THE COLLOQUY BETWEEN THE COURT AND PETITIONER'S ATTORNEY WITH RESPECT TO THE INSTRUCTION HERE AT ISSUE.

[Official Transcript pages 332 line 12 through 333 line 6].

THE COURT: The Court proposes to give Instruction No. 5, offered by the State as No. 3.

MR. BOGGS: Your Honor, I object to that instruction. I can cite to your Honor a number of cases, I believe they are all in the Federal Court or—I believe in the Federal Court, one in the 9th Circuit Court of Appeals that have disproved the use of this instruction. The holding has been that the instruction has the effect of shifting the burden of proof on the issue of intent to the defense and that is impermissible under the Federal Constitution, due process of law. Stating from the case of *Mullaney vs. Wilbur* the United States Supreme Court case, the 5th Circuit has categorically denounced and the 9th Circuit—and it was not reversible but nonetheless it was an error to use the instruction.

---

1. An appendix to the Petition for Writ of Certiorari filed in the office of the Clerk of the Supreme Court set out the instructions given by Judge Boyd in the trial of Mr. Sandstrom, as well as the colloquy between the court and petitioner's attorney with respect to the instruction at issue in that case. The instructions and the colloquy are set out in an appendix to this dissent.

2. These materials may be found at Appendix to Petition for Certiorari 34–37, *Sandstrom v. Montana,* No. 78–5384 (C.I.S. Microfische, Supreme Court Records and Briefs F.O. 78).

My intern can give you those citations if you would like to see them.

THE COURT: You can given those to the Supreme Court. The objection is overruled.

## INSTRUCTIONS GIVEN BY JUDGE BOYD

### INSTRUCTION NO. 3

The defendant, David Sandstrom, is by information charged with the crime of deliberate homicide, a felony, in that on or about November 1, 1976, in Deer Lodge County, Montana, he purposely or knowingly caused the death of Annie Jessen by stabbing the said Annie Jessen in the back with a knife.

Before you may convict the defendant, David Sandstrom of the crime of deliberate homicide, a felony, you must be convinced beyond a reasonable doubt of the following elements of this crime:

1) That the defendant did cause the death of Annie Jessen on November 1, 1976, in Deer Lodge County, Montana; and

2) That the defendant caused the death of Annie Jessen purposely or knowingly.

### INSTRUCTION NO. 4

You are instructed the law presumes a person innocent until he is proved guilty, and this proof must be of a nature to satisfy your minds beyond a reasonable doubt of the guilt of the accused. The mere fact that an information has been filed, charging a person with a crime, does not in itself, raise a presumption of guilt.

The presumption of innocence has the weight and effect of evidence in the Defendant's behalf, and this should continue until it is rebutted by competent evidence which displaces any reasonable doubt you might otherwise have of the Defendant's guilt.

### INSTRUCTION NO. 5

The law presumes that a person intends the ordinary consequences of his voluntary acts.

### INSTRUCTION NO. 6

A Material element of every crime is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and which he is physically capable of performing.

### INSTRUCTION NO. 7

"Knowingly" is defined as follows: A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstances exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Equivalent terms such as "knowingly" or "with knowledge" have the same meaning.

### INSTRUCTION NO. 8

"Purposely" is defined as follows: A person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result.

### INSTRUCTION NO. 9

Purpose and knowledge are manifested by the circumstances connected with the offense. Purposes and knowledge need not be proved by direct evidence, but may be inferred from acts, conduct and circumstances appearing in evidence.

### INSTRUCTION NO. 10

A person who is in an intoxicated condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. An intoxicated condition may be taken into consideration in determining the existence of a mental state which is an element of the offense.

## INSTRUCTION NO. 11

"Mitigated deliberate homicide" is defined as follows: Criminal homicide constitutes mitigated deliberate homicide when a homicide which would otherwise be deliberate homicide is committed under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the actor's situation.

## INSTRUCTION NO. 12

You are instructed that the defendant, David Sandstrom, has abandoned the defense of mental disease or defect and you may not acquit the defendant on that basis.

## INSTRUCTION NO. 13

If you are convinced beyond a reasonable doubt that the defendant, David Sandstrom, caused the death of Annie Jessen on November 1, 1976, in Deer Lodge County, Montana, but you are not convinced beyond a reasonable doubt that the defendant caused the death of Annie Jessen purposely or knowingly, then you should find the defendant guilty of mitigated deliberate homicide.

## INSTRUCTION NO. 14

If you are not convinced beyond a reasonable doubt that the defendant, David Sandstrom, caused the death of Annie Jessen on November 1, 1976, in Deer Lodge County, Montana, purposely or knowingly, then you should find the defendant not guilty of deliberate homicide.

## INSTRUCTION NO. 15

You are to draw no conclusions or inferences from the fact that the defendant has not testified in this case, and you are entitled to draw no conclusions or inferences as to his reason in that regard.

FAY, Circuit Judge, specially concurring, in which RONEY, HILL and HENDERSON, Circuit Judges, join:

While concurring in the judgment and most of the opinion of the court, I dissent from the position taken by the majority in sections IIA and B of The Sandstrom Claim. The jury charge given by the trial judge is set forth in its entirety in the margin.[1] As Justice Rehnquist pointed out in his special concurrence in *Sandstrom:*

[W]e have consistently recognized, "a single instruction to a jury may not be judged in artificial isolation, but must be

1. Appellant's Complete Jury Charge as contained in the transcript of the first trial, pp. 174–180.

THE COURT'S ORAL CHARGE

The State accuses and charges Curfew Davis, who must be identified as the Defendant on trial, with the offense of murder, for that the said Curfew Davis, on the 19th day of July in the year of 1974, in Troup County, Georgia, did then and there unlawfully, and with malice aforethought, killed one Ann Starnes, a human being, by shooting the said Ann Starnes with a certain pistol, contrary to the laws of said state, the good order, peace and dignity thereof.

Now, what I have done, Ladies and Gentlemen of the Jury, I have read to you the material allegations of the State's bill of indictment against the Defendant on trial. To this indictment, the Defendant has entered his plea of not guilty, which along with the indictment of the State, from the issues which are to be resolved in this case.

I charge you, Ladies and Gentlemen, this indictment by the State will be out with you during your deliberation, but I caution you, that it is not evidence and should not be regarded as evidence by you. While the indictment of the State is not evidence and has

no probative value, it may and should be referred to by you for the purpose of ascertaining in detail the charges against the Defendant on trial.

Ladies and Gentlemen, a crime is a violation of a statute of this State in which there shall be a union of joint operation of acts, or an omission to act, and an intention for criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, but the presumption may be rebutted. A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted. Every person is presumed to be of sound mind and discretion, but the presumption may be rebutted.

I charge you, every person concerned in the commission of a crime is a party thereto, and may be charged with and convicted of commission of a crime. A person is concerned in the commission of a crime only if he:

(1) Deliberately commits the crime; or (2) intentionally causes some other person who commits the crime, under certain circumstances that the other person is not guilty of any crime, either in fact or because of legal capacity; or (3) intentionally aids or abets in the commission of a crime; or (4) intentionally advises and encourages, hires, counsels or procures another to commit the crime.

Now Ladies and Gentlemen of the Jury, a person commits murder when he unlawfully and with malice aforethought, either expressed or implied, causes the death of another human being. Expressed malice is the deliberate intention unlawfully to take the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all of the circumstances of the killing show an abandoned and malignant heart. A person also commits the crime of murder when in the commission of a felony causes the death of another human being, irrespective of malice.

I charge you, a person convicted of murder shall be punished by death or by imprisonment for life. But, in this connection, Ladies and Gentlemen, at this stage of the trial, I charge you that you are not to be concerned with the punishment of the Defendant at this stage, only as to his guilt or innocence.

Now, Ladies and Gentlemen of the Jury, I charge you that the Defendant enters upon the trial of his case with the presumption of innocence in his favor, and this presumption remains with him, until and unless, the State shall overcome it and remove it by the introduction of competent evidence in your presence and hearing, sufficient to convince your minds beyond a reasonable doubt of the guilt of the accused.

In this connection, Ladies and Gentlemen, I charge you that it is the duty of the State to prove each and every one of the material allegations in the indictment, and the guilt of the Defendant, sufficient to convince your minds beyond a reasonable doubt of the guilt of the accused.

Ladies & Gentlemen, a reasonable doubt is a doubt for which you can give a reason, and means just what it says. It is a doubt of a fair-minded, impartial juror, honestly seeking the truth. It is not an arbitrary or a capricious doubt, but a doubt arising from a consideration of the evidence, or from a lack of the evidence, or from a conflict of evidence. Whether dependent upon positive or circumstantial evidence, the true question in criminal cases, is to know whether it would be possible at the conclusion for which the evidence may be false, but whether there is sufficient evidence to satisfy the minds and conscience beyond a reasonable doubt. If after considering all of the facts and circumstances of the case, your minds are wavering, unsettled and unsatisfied, then that is the doubt of

the law and you should acquit the Defendant. But, if that doubt does not exist in your minds as to the guilt of the Defendant, then you should convict.

I further charge you, Ladies & Gentlemen of the Jury, that you are the judges of both the law and the facts in criminal cases, the law you take from the Court as given you in charge, and the fact you get from the evidence introduced, and to the one you apply the other, and then make your findings as to the truth of the case. The charge of the Court is the law of the case, and by that you are bound, except you are the judges of it in applying it to the facts as you find them to be.

Ladies & Gentlemen, you are made by the law the exclusive judges of the credibility of the witnesses. In passing upon their credibility, you may consider all of the facts and circumstances of the case, the witnesses manner of testifying, their relationship to the parties, if any, their intelligence or lack of intelligence, their interest in the results of the case, their bias or prejudice, if any exist, their means of knowing the facts to which they testify, the probability of their testimony, and of the occurrences to which they testified, and also, their personal credibility sofar [sic] as the same may legitimately appear upon the trial of the case. If upon the consideration of the evidence in this case, you find that there is a conflict between the witnesses, or a conflict between a witness or witnesses, if any, it is your duty to reconcile that conflict, if you can, without imputing perjury to any witness. If you cannot do that, it then becomes your duty to believe that witness or those witnesses that you think are best entitled to believe, and you may consider their interest, or want of interest, in the results of the case, their bias or prejudiced, if any appears, the reasonableness or unreasonableness of the statements they make, their familiarity with the facts to which they testified about, and their personal and the personal credibility of a witness, sofaras [sic] the same may legitimately appear upon the trial of the case. But, the Jury as stated, are at last the sole and exclusive judges of what witnesses they believe or disbelieve, and what testimony they will credit or discredit.

Ladies & Gentlemen, I charge you object [sic] of all legal investigations is the discovery of the truth. Direct evidence is that which points immediately to the question at issue. Indirect or circumstantial evidence is that which tends to establish the issue by proof of various facts and circumstances, sustained by their consistency the hypothesis claimed.

Ladies and Gentlemen, before you would be authorized to convict the Defendant on circumstantial evidence alone, the proven facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused. The term hypothesis, as used in this connection, refers to and means such

viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–147 [94 S.Ct. 396, 400–401, 38 L.Ed.2d 368] (1973). And surely if this

charge had, in the words of the Court, "merely described a permissive inference," *ante,* at 514, it could not conceivably have run afoul of the constitutional

reasonable inferences as are ordinarily drawn by ordinary men in the light of their experiences in every day life. The guilt of the Defendant must be proved beyond a reasonable doubt and must not rest upon conjecture or bare suspicion. Where all of the facts and circumstances of the case, and all reasonable deductions therefrom, presents two theories, one of guilt and the other of innocence, then you should acquit the Defendant.

Ladies & Gentlemen, the STATE has introduced into evidence certain alleged admissions by the Defendant, which the State contends are incriminatory. I charge you, an admission as applied to criminal cases, is the avowal of a fact or circumstance by the Defendant, not amounting to a confession of guilt, but tending to prove the offense and from which guilt may be inferred. An incriminatory statement is one made by the Defendant, which tends to establish the guilt of the accused, or one from which, together with other proven facts, ifany [sic] guilt may be inferred, or one which tends to disprove some defense set up by the accused. Admissions and incriminatory statements are not direct but circumstantial evidence and should be scanned with care and received with great caution. The Jury may believe admissions or incriminatory statements in whole or in part, believing that which they find to be true, and rejecting that which they find to be untrue, unless the State relies entirely upon such admissions or statements.

Ladies and Gentlemen of the Jury, I charge you that in this state, in a criminal case, if the Defendant wishes to testify, and announces in open Court his intention to do so, he may so testify in his own behalf. If so, he shall be sworn as any other witness, and may be examined and cross-examined as any other witness. However, I charge you the failure of a Defendant to testify, shall create no presumption of guilt against him and no comment shall be made because of such failure.

Ladies and Gentlemen of the Jury, as previously charged, our law provides, that a person commits murder when he unlawfully, and with malice aforethought, either expressed or implied, causes the death of another human being, In this connection, I charge you that expressed malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all of the circumstances of

the killing show an abandoned and malignant heart. There can be no murder under the laws of this state without malice, either expressed or implied. The law presumes it to be malice until the contrary appears from circumstances of alleviation or excuse, or justification and under the laws it is incumbent upon the Defendant to make out such circumstances satisfactory to the Jury unless they appear from the evidence offered against the Defendant.

Ladies and Gentlemen, while it is true that the law presumes malice when a homocide [sic] has been shown, yet that presumption of malice may be rebutted by the Defendant from evidence offered by him, or from evidence offered by the State or from both.

Now, Ladies and Gentlemen of the Jury, after careful consideration of all of the evidence, facts and circumstances of this case, under the rules of law that I have given you in charge, if you believe beyond a reasonable doubt that this Defendant committed the crime for which he is charged, it would be your duty to find the Defendant guilty, and the form of your verdict would be, "We, the Jury, findthe [sic] Defendant guilty." If on the other hand, after careful consideration of all of the evidence, facts and circumstances of this case, under the rules of law that I have given you in charge, you do not believe beyond a reasonable doubt that this Defendant committed the crime for which he is charged, it would then be your duty to acquit the Defendant, and the form of your verdict would be "We, the Jury findthe [sic] Defendant guilty." If on the other hand, after careful consideration of all of the evidence, facts and circumstances of this case, under the rules of law that I have given you in charge, you do not believe beyond a reasonable doubt that this defendant committed the crime for which he is charged, it would then be your duty to acquit the Defendant, and the form of your verdict would be, "We, the Jury, find the Defendant not guilty."

Whatever your verdict may be, it must be unanimous and you will write it on the back of the indictment. There is a place provided there for it, which you will have out with you, date it, and one of you sign it as foreman. And, when you have reached your verdict, you then may return it into Court.

With these instructions, Ladies and Gentlemen, you may retire to the Jury Room to consider your verdict.

decisions cited by the Court in its opinion.

442 U.S. at 527, 99 S.Ct. at 2461.

The trial judge and the attorneys made it abundantly clear to the jury on numerous occasions that the State had the burden of proving each and every element of the offense charged beyond a reasonable doubt. This was repeated in the final charge to the jury. The language dealing with the "presumption" is both short in length and totally in accord with human behavior. Acts generally speak for themselves, particularly in the absence of any contrary explanation. More importantly, however, each sentence containing the presumption language concluded with the words, "but the presumption may be rebutted." Such language was not present in the charge reviewed by the Court in *Sandstrom*. *See Sandstrom*, 442 U.S. at 525 n. 12, 99 S.Ct. at 2460 n. 12. Justice Brennan emphasized that:

> "They [jury] were not told that the presumption could be rebutted, as the Montana Supreme Court held, by the defendant's simple presentation of 'some' evidence; nor even that it could be rebutted at all."

442 U.S. at 517, 99 S.Ct. at 2455.

In my opinion, the holding of the Supreme Court in *Sandstrom* has no application to the charge given in this case. *Sandstrom* condemns any "presumption", or other charge, which would shift to the defendant the burden of disproving an element of the crime charged. The jury trying this case was instructed in clear terms that (1) criminal intent must be established by the State and (2) they should look at all the surrounding circumstances of the shooting to determine whether or not such existed. The charge said:

> "A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."

Such language hardly shifts any burden of proof to the defendant.

The majority opinion finds support for its holding in our court's opinion in *Franklin v. Francis*, while at the same time criticizing, but not reversing or overruling, our court's opinion in *Corn v. Zant*. My own view is that both are inappropriate. We are considering this issue and this case as an *en banc* body. We are bound only by existing precedents of the United States Supreme Court.

In my opinion the charge given is in complete accord with *Sandstrom*.

JOHNSON, Circuit Judge, dissenting from IIC, in which GODBOLD, Chief Judge, KRAVITCH, HATCHETT and CLARK, Circuit Judges, join:

The majority holds that the court's instructions on the elements of malice and intent shifted the burden of proof in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), but finds this error harmless because petitioner raised a non-participation defense rather than arguing that he lacked *mens rea*. Because the majority's analysis is based on a false distinction among different types of defenses, and a flawed understanding of the jury's responsibility with respect to the essential elements of a crime, I dissent.

The plurality opinion of the Court in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), cast serious doubt on whether the doctrine of harmless error can be applied to the shifting of a presumption which is so integral to the concept of a fair trial. While this restriction on the harmless error rule failed to garner the support of a majority, the Court affirmed the pre-existing federal requirement that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This Circuit propounded a similar standard in *Lamb v. Jernigan*, 683 F.2d 1332, 1342 (11th Cir.1982), *cert. denied*, 460 U.S. 1024,

103 S.Ct. 1276, 75 L.Ed.2d 496 (1983), where it stated that error in a case of a *Sandstrom* violation can only be harmless if it applied to an element of the crime which was not at issue at the trial, or if the evidence was overwhelming as to the defendant's guilt.

The majority, however, takes its bearings primarily from *Engle v. Koehler*, 707 F.2d 241, 246 (6th Cir.1983), *aff'd by an equally divided court*, — U.S. —, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984), a Sixth Circuit rendition of the harmless error doctrine which attempts to distinguish between cases in which the defendant claims non-participation in the crime and cases in which the defendant claims lack of *mens rea*. In *Engle* the court concluded that, while *Sandstrom* error in a case where a *mens rea* defense has been raised is sufficiently prejudicial that error cannot be harmless, similar error in a case in which a non-participation defense has been raised may be harmless. The majority in the instant case justifies this distinction by explaining that where a non-participation defense is presented, intent is not at issue in the trial.

The majority's analysis fails, at the outset, to recognize that *Engle* does not compel the result reached in this case. *Engle*'s conclusion that a *Sandstrom* error in a case involving a non-participation defense *may be* harmless is not determinative of any particular outcome in the instant case. More importantly, neither the Sixth Circuit nor the majority provides an adequate justification for the distinction between non-participation and *mens rea* defenses. Intent is an issue which must be addressed by the jury in every malice murder case, because

it is an element which the jury must find beyond a reasonable doubt if it is to convict a defendant. Intent is thus "at issue," i.e., remains a question to be resolved by the jury, unless it is admitted by the defendant, *see Connecticut v. Johnson, supra*, 460 U.S. at 87, 103 S.Ct. at 978, or the evidence concerning it is so "overwhelming" that a jury can reach only one conclusion, *see Lamb v. Jernigan, supra*, 683 F.2d at 1342. Except where it includes a direct admission of intent, no defense, in and of itself, can take the element of intent out of "issue." Because the jury must still find this element beyond a reasonable doubt, an instruction which removes the burden of proving this element from the prosecution is no less prejudicial to the defendant in a case where he focuses on the defense of non-participation than in a case where he argues that he lacked *mens rea*.

The application of the *Lamb* or *Chapman* standard to the facts of the case compels rejection of the majority's conclusion. At no point in the proceeding did petitioner state that he intended to kill the victim. Nor can it be said that the evidence of intent *on the part of the petitioner* was "overwhelming."[1] Davis stated on several occasions that he had driven the victim and two acquaintances to a private home, that on arrival he had exited to another room, and that he did not even see any of the others until he heard a shot and entered to find the victim on the floor. The State, moreover, presented no alternative version of the facts. The question of whether the prosecution had proved beyond a reasonable doubt petitioner's intent to kill was very much "at issue." It is impossible to say that an instruction which relieved the prosecution of its burden with respect

---

1. The majority proposes to consider instead whether the evidence "that whoever killed the victim did so with intent" was overwhelming. This substitution is wholly unacceptable for the obvious reason that it *assumes* that "whoever killed the victim" and the petitioner are the same person—the very issue which was before the jury during the trial. Under the "overwhelming evidence" prong of the *Lamb* test, the court is supposed to evaluate the evidence which was presented *at trial*, not the conclusions which were drawn from that evidence by

the jury. *Lamb v. Jernigan, supra*, at 1342. The evidence concerning the wounds sustained the victim was not evidence which was offered at trial to describe the mental state of Curfew Davis. It is not appropriate to apply that evidence to him under the *Lamb* standard simply because the jury later found him guilty. If the retroactive validation and application of all of the State's evidence to the defendant were acceptable, a reviewing court could find the evidence "overwhelming" in virtually any case in which a guilty verdict had been reached.

to this element was harmless beyond a reasonable doubt.