Christopher A. BURGER,
Petitioner-Appellee,
Cross-Appellant,

v.

Ralph KEMP, Warden, Georgia Diagnostic and Classification Center,
Respondent-Appellant, Cross-Appellee.

No. 81–7419.

United States Court of Appeals,
Eleventh Circuit.

March 13, 1986.

William B. Hill, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant, cross-appellee.

Joe Nursey, Andrea I. Young, Millard Farmer, Pamela L.J. Arangno, Atlanta, Ga., for petitioner-appellee, cross-appellant.

Before VANCE and JOHNSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

ON REMAND FROM THE SUPREME
COURT OF THE UNITED STATES

. PER CURIAM:

This habeas corpus action, before us for the third time, was remanded by the Supreme Court for our reconsideration in light of *Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), *aff'g* 720 F.2d 1206 (11th Cir.1983). The facts of the underlying murder case, for which petitioner Burger was sentenced to death, are reported at *Blake v. Zant,* 513 F.Supp. 772, 788–89 (S.D.Ga.1981). The sole issue now before us is whether the trial court's jury instruction on intent impermissibly shifted the burden of proof on that issue to the defendant. We hold that the challenged instruction constituted harmless error. In our previous opinions, 718 F.2d 979 (11th Cir.1983), 753 F.2d 930 (11th Cir.1985), we found the other issues presented in Burger's habeas petition to be without merit. Consequently, we remand to the district court with instructions that the writ be denied.

In *Franklin,* the petitioner argued that the state trial court erred in giving the following jury instruction:

A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

*Franklin,* —— U.S. at ——, 105 S.Ct. at 1969–70; 720 F.2d at 1209 n. 2. The Supreme Court agreed with our conclusion that this instruction was constitutionally infirm under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), because a reasonable juror could understand it as creating a mandatory—though rebuttable—presumption of intent shifting the burden of proof on that issue to the defense. —— U.S. at ——, 105 S.Ct. at 1977; 720 F.2d at 1212. The Court also

agreed with our finding that under the circumstances of the case, the *Sandstrom* error could not be considered harmless. *Id.*

The jury instruction challenged in this case is virtually identical to the one held unconstitutional in *Franklin.* After giving the *Franklin* instruction, however, the court in this case added the following:

A specific intent to commit the crime charged in this indictment is an essential element that the State must prove beyond a reasonable doubt. Intent is always a question for the jury, and is ordinarily ascertained by acts and conduct. Intent may be shown in many ways, provided the jury finds that it existed from the evidence produced before you. It may be inferred from the proven circumstances, or by acts and conduct, or it may be presumed when it is the natural and necessary consequences of the act.

*Blake,* 513 F.Supp. at 792.

This additional language, taken by itself, appears to be constitutionally unobjectionable; rather than creating a mandatory presumption, it merely instructs the jury that it *may* presume intent from the natural consequences of an act. The Supreme Court made clear in *Franklin,* however, that "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." —— U.S. at ——, 105 S.Ct. at 1975. Thus, whether this additional language sufficed to render the instruction constitutional may depend upon whether the language is viewed as clarifying or merely contradicting the erroneous charge which preceded it.

We need not reach this issue, however, because we conclude that any error in the instruction was harmless. In *Franklin* the defendant had based his entire defense on the issue of intent, and "[t]he facts did not overwhelmingly preclude that defense." 720 F.2d at 1212. We thus concluded that "[b]ecause intent was plainly at issue in [the] case, and was not overwhelmingly proved by the evidence ... we cannot

find this error to be harmless." *Id.* The Supreme Court agreed. —— U.S. at ——, 105 S.Ct. at 1977. On the other hand, if intent is *not* at issue in a case, or if intent *is* overwhelmingly proved, a *Sandstrom* error on the element of intent may be found harmless. *Davis v. Kemp,* 752 F.2d 1515, 1521 (11th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 2689, 86 L.Ed.2d 707 (1985).[1]

In this case, Burger's sole defense was to put the prosecution to its proof. As the essence of such a defense is to require the state to fulfill its burden as to each element of the offense, it cannot be said that intent was not at issue. *Cf. id.* (defense of non-participation removes intent from issue even without explicit concession). Nevertheless, it is significant that Burger chose not to raise the issue of intent expressly, for this left uncountered the strong implication of intent which was bound to arise from the evidence presented by the state.

The record tends to show that after sexually assaulting their victim, Burger and his co-defendant placed the victim in the trunk of his taxicab. After telling a friend what they had done, they drove to a water-filled pit. Opening the trunk, Burger found that the victim was still alive. With the victim still inside Burger then closed the trunk once more, removed incriminating fingerprints from the vehicle, and drove the car into the pond, jumping out as the car entered the water. The victim died of drowning. Eventually, Burger confessed to the crime, described the incident in great detail, and led authorities to the pit, pointing out where they could find the victim's body.

Burger's only argument as to why the *Sandstrom* error should not be considered harmless in light of the overwhelming evidence from which the jury could infer intent is that he had consumed "four or five pitchers of beer" before the incident. This, he argues, brings his case under our decision in *Thomas v. Kemp,* 766 F.2d 452 (11th Cir.1985), in which a *Sandstrom* er-

ror on intent was found not harmless where the defendant was intoxicated. In *Thomas,* however, the defendant affirmatively raised the issue of intent:

> Thomas took the stand in his own defense and testified that he had no memory of the incident ... He attributed his lack of memory to pills he ... ingested .... Thomas' counsel elicited testimony from the State's examining psychiatrist that it would be possible for a drug to "overmaster [a] person's will or impel him to commit a crime," ... [and] requested and obtained a jury charge on drug intoxication....

766 F.2d at 455–56. By contrast, Burger raised no intoxication defense. Burger's counsel mentioned the beers in his opening statement and Burger's confession referred to them, but the defense made no attempt to argue that the alcohol in any way diminished Burger's capacity or rendered him incapable of forming an intent to commit the murder.

Under *Sandstrom,* a jury may never be instructed that intent is or must be presumed. Nevertheless, a case may present circumstances which imply intent so overwhelmingly that a reviewing court may conclude that any reasonable jury would infer intent even without being instructed that it had to do so. This is such a case. We are convinced beyond a reasonable doubt that a reasonable jury would have convicted Burger without having to interpret the jury instructions as creating a mandatory presumption of intent. We therefore hold that any error in the instructions was harmless.

The case is REMANDED to the district court with instructions that the writ be denied.

JOHNSON, Circuit Judge, dissenting:

In *Franklin v. Francis,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the United States Supreme Court held that a jury instruction virtually identical to one

---

1. We note that the Supreme Court has recently granted certiorari in a case in which it may consider whether a *Sandstrom* error was harm-

less. *Rose v. Clark,* 762 F.2d 1006 (6th Cir.), *cert. granted,* —— U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985).

given in this case was unconstitutional because a reasonable juror could have understood it to shift to the defendant the burden of proof on the issue of intent. The majority does not reach the issue of whether additional language rendered this instruction constitutionally permissible in the instant case, because the majority holds that, even if the instruction was unconstitutional, any error in the instruction was harmless. In coming to this conclusion, the majority misreads the record of petitioner's trial in state court. I dissent.

## I. Constitutionality of the Challenged Instruction

It is clear that the challenged instruction in the instant case violated *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and its progeny, and therefore was unconstitutional. As in *Franklin,* the jury was instructed: "A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted." A reasonable juror could have understood this instruction to create "a mandatory presumption that shifted to the defendant the burden of persuasion on the element of intent once the State had proved the predicate acts." *Franklin, supra,* 105 S.Ct. at 1972.

The instruction in the instant case was followed by a further instruction, which stated:

> A specific intent to commit the crime charged in this indictment is an essential element that the State must prove beyond a reasonable doubt. Intent is always a question for the jury, and is ordinarily ascertained by acts and conduct. Intent may be shown in many ways, provided the jury finds that it existed from the evidence produced before you. It may be inferred from the proven circumstances, or by acts and conduct, or it may be presumed when it is the natural and necessary consequences of the act.

*Blake v. Zant,* 513 F.Supp. 772, 792 (S.D. Ga.1981). As the majority notes, the Supreme Court stated in *Franklin* that "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Franklin, supra,* at 1975. The Court continued, "A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Id.*

The instruction following the *Franklin* instruction in this case does not explain the *Franklin* instruction. In stating that the jury *may* presume intent from the natural consequences of an act, the second instruction merely contradicts the first. In this situation, we are required to hold that the *Franklin* instruction was unconstitutional.

## II. Harmless Error Analysis

Where a burden-shifting instruction on intent constitutes *Sandstrom* error, the error can be held harmless if the court can say beyond a reasonable doubt that the faulty instruction did not contribute to the verdict obtained. *Davis v. Kemp,* 752 F.2d 1515, 1521 n. 7 (11th Cir.1985) (en banc) (*quoting Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). This Court has identified two situations where a *Sandstrom* violation on the issue of intent can be held harmless: (1) where intent is not at issue in the case, or (2) where the evidence of intent is overwhelming. *R. Tucker v. Kemp,* 762 F.2d 1496, 1502 (11th Cir.1985) (en banc).

The majority holds that in the instant case the petitioner's sole defense was to put the prosecution to its proof. The majority concludes that, although this defense put intent at issue, the defense "left uncountered the strong implication of intent which was bound to arise from the evidence presented by the state." The majority therefore holds that the evidence of intent in this case was overwhelming, and that the *Sandstrom* error was harmless.

A reading of the state trial transcript reveals that Burger's defense entailed far more than simply putting the prosecution to its proof. Throughout the trial, Burger's counsel sought to show that Burger's

co-defendant Stevens was the moving force behind the entire crime, and that Burger was merely a follower who did what Stevens told him to do. Indeed, the district court in this case has found that an examination of the trial record shows considerable effort to portray Stevens as the chief architect of the crime. *Blake, supra,* at 795. The essence of Burger's defense was that, although Burger took part in the crimes, he did so under duress and did not have the requisite intent for murder.

The state's main evidence in the guilt phase of this case came from a confession given by Burger and from testimony by James R. Botsford, who was in the same military unit as Burger and Stevens and was their squad leader. The confession was read to the jury by witness Clarence Haire, trial transcript ("tr.") at 278–286, who had taken the confession. In his confession, Burger stated that he and Stevens were out drinking on the night of the crime and ran out of money. Stevens suggested to Burger that they could get some money by robbing a cab driver. Stevens and Burger arranged to take a taxicab to the airport, where they were to pick up Botsford.

On the way to the airport, Stevens pulled a butcher knife on the cab driver, the victim of the crime. After the victim said that he had only sixteen dollars, Stevens forced the victim to get out of the cab and remove his clothes. Stevens discarded the clothes and got in the rear of the vehicle with the cab driver. While Burger was driving, Stevens forced the victim to perform oral sodomy upon him, and Stevens then performed anal sodomy on the victim. At some point, Burger stopped the car and the victim was put in the trunk of the car.

Burger and Stevens picked up Botsford at the airport and proceeded to drive Botsford back to Fort Stewart, their military base. Botsford asked Burger why he was driving the taxicab, and Stevens answered that they had "taken" the taxicab. Stevens told Botsford that the cab driver was in the trunk, and indicated that they were going to kill the cab driver. As Botsford got out of the car at the base, he asked them not to kill the victim.

Burger and Stevens drove the vehicle away, and then encountered a patrol vehicle. When the patrol vehicle went by, Stevens told Burger that they were going to "get burnt," and that they had to do something with the cab. Stevens told Burger to drive to a nearby pond. At the pond, Stevens directed Burger to wipe the fingerprints off the car. Stevens then directed Burger to put the car in gear and run it into the pond.

After doing this, Burger started to walk away and told Stevens he was leaving. Stevens told him he could not leave, "because we have to make sure—want to make sure the car goes down, with the man in the trunk."

In his cross-examination of Mr. Haire, Burger's counsel asked, "Now, your testimony to this jury as to what Burger told you—based on your testimony, is it not, as to what he said and what is contained in his statement, that Stevens was the one that said drive it to the pond, and Stevens more or less directed the whole operation, according to your testimony; is that correct?" Tr. at 297. The court sustained an objection to the question, stating to Burger's counsel: "You're getting into the province of the jury to determine the facts of the situation." *Id.* Burger's counsel then elicited from Mr. Haire the fact that Burger was only 17 years old at the time of the crime.

Mr. Botsford was the key witness for the state. On cross-examination by Burger's counsel, Mr. Botsford gave the following testimony:

Q. Mr. Botsford, I think you were friends—you say you were friends with Chris Burger and Tom Stevens in boot camp?

A. That's correct.

Q. When they—when you got in the cab and you heard this voice or whatever it was in the back of the cab, did you know who that was?

A. No, I didn't.

Q. So you don't know of your own knowledge whether that was Roger Honeycutt or not; do you?

A. I didn't know him by name. I knew it was the cab driver.

Q. You just knew it was the cab driver back there?

A. The cab driver of the cab.

Q. Well, that's just because they told you it was; isn't that right?

A. That's right.

Q. And, the person that told you that was Stevens?

A. That's correct.

Q. In fact, Stevens was the one that was doing all the talking; wasn't he?

A. Most of it.

Q. And, Burger was just sorta going along, sorta doing sorta like Stevens was telling him to do; wasn't he?

A. Sorta.

Q. I think you said that when you said something about turning the cab driver loose, Burger agreed that was the thing that should be done?

A. That's correct.

Tr. at 111.

A clinical psychologist testified that Burger had an IQ of 82, and that Burger lacked the motivation or power of reasoning to learn from previous experiences. Tr. at 247. The psychologist also testified that Burger was "functioning probably at the level of about a twelve year old person." Tr. at 248.

Finally, in closing argument at the guilt phase, Burger's counsel sought to emphasize the evidence that had been produced indicating that Stevens was in control of the crime. Counsel said:

> One of the interesting things is the testimony here by Botsford was all about Stevens, what Stevens did, what Stevens said; not what Burger did or what Burger said. I would have thought and you may gather that we weren't trying Chris Burger here; we were trying Thomas Stevens. Don't convict Burger on what somebody said about Stevens, because

Stevens is not on trial. Burger is on trial.

Tr. at 371–72.

It is clear from the foregoing that Burger's defense did not consist merely of putting the prosecution to its proof. Rather, Burger presented substantial evidence, and argument based on that evidence, that his participation in the crime was under the direction and control of Stevens. Stevens did virtually all the talking and gave all the orders. The crime and the killing were Stevens' ideas. Botsford testified that, when Botsford suggested that the cab driver should be set free, *Burger agreed that this was what should be done.*

Burger's defense went squarely to the issue of whether he intended to kill the victim. I cannot agree with the majority that the evidence of Burger's intent to kill was overwhelming. In finding that Burger had the requisite intent, the jury might have relied on the faulty instruction that a person is presumed to intend the natural and probable consequences of his acts. I cannot say beyond a reasonable doubt that the faulty instruction did not contribute to the verdict obtained. *Davis, supra,* at 1521 n. 7. Accordingly, I dissent.